159 P.3d 65

DONALD W., SR. and Robin
C., Appellants,

v.

ARIZONA DEPARTMENT OF
ECONOMIC SECURITY and
Donald W., Jr., Appellees.

No. 1 CA–JV 06–0088.

Court of Appeals of Arizona,
Division 1, Department C.

May 24, 2007.

Review Granted Sept. 25, 2007.

Paul J. Mattern, Attorney at Law, Phoenix, Attorney for Appellant Father.

John A. Cicala, Attorney at Law, Yuma, Attorney for Appellant Mother.

## OPINION

KESSLER, Judge.

¶ 1 In this appeal, we determine whether parents have the right to effective assistance of appointed counsel in parental severance hearings and, if so, under which standard we determine whether counsel was ineffective. We confirm prior Arizona law holding that ineffective assistance of appointed counsel may constitute reversible error in the severance context. We further hold that for assistance of appointed counsel to withstand constitutional scrutiny, it must satisfy standards of fundamental fairness.

¶ 2 For the reasons stated below, we conclude that Appellant–Mother Robin C. ("Mother") did not receive effective assistance of counsel. Accordingly, we affirm the severance order as to Appellant–Father Donald W., Sr. ("Father"), vacate the severance order as to Mother, and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 In April 2005, the Arizona Department of Economic Security ("ADES") filed a petition alleging Appellee Donald W., Jr. ("Child")—then eighteen months old—was dependent as to Mother and Father. According to the petition, Mother was arrested on April 25, 2005, and Father was admitted to the hospital on the same day.[1] The petition further alleged that Mother engaged in substance abuse, that the home was unfit, and that Father and Mother engaged in domestic violence. ADES concurrently filed a temporary custody notice, stating that there was no alternate caregiver present to care for Child.

¶ 4 After mediation in July 2005, Mother pled no contest to the allegations of the

Terry Goddard, Arizona Attorney General By Kathleen E. Skinner, Assistant Attorney General, Mesa, Attorneys for Appellees.

---

1. The petition alleges Mother hit Father and kicked him in groin, leading to the arrest and hospitalization. Later reports indicate Mother was arrested on outstanding warrants for failure to appear, and that Father was having a "hernia attack."

dependency petition and agreed to abide by the CPS case plan. After a trial in August 2005, the court found Child dependent as to Father.

¶ 5 Father underwent a psychological evaluation in January 2006. The psychologist reported that Father had more than sufficient ability to understand any directions imposed by the court or by CPS. The psychologist, however, characterized Father as conflicted and avoidant, noting that he scored highest on scales measuring avoidant and negativistic personality characteristics. According to the psychologist, these characteristics were likely to result in conflict with significant others. The psychologist described a cyclical pattern in Father's behavior in which he would become contrite and express remorse, apologize and overcontrol his actions, but then subsequently act out again.

¶ 6 In February 2006, ADES moved to terminate Mother's and Father's parent-child relationships with Child. In the motion, ADES alleged Child had been in an out-of-home placement for nine months or longer and Mother and Father had substantially neglected or willfully refused to remedy the circumstances leading to the out-of-home placement. CPS filed a report with the juvenile court stating that, while Father had undergone a psychological evaluation in January, both Mother and Father were non-compliant with services. A February report of the Foster Care Review Board recommended that Child be placed in an adoptive placement.[2]

¶ 7 Mother was not present at a permanency planning hearing in March 2006. At the beginning of that hearing, the following exchange took place:

The Court: Mr. Crimmins, you're here for the mother?

Mr. Crimmins: Yes, your honor. I'm informed that she is around because she does call the policemen occasionally. She's the mother who was—how do I say it politely though—

Ms. Avila–Taylor:[3] Under the influence.

Mr. Crimmins: Not quite with us at the last hearing . . .

The Court: The one I questioned her sobriety?

Ms. Florez:[4] Yes

Mr. Crimmins: Yes, you did, Judge, and then you ordered that she go get tested. Apparently she didn't show. I don't understand why.

The parties then proceeded to schedule a contested severance hearing. ADES noted it did not think this was a complicated case and that no more than an hour was necessary. CPS also informed the court that an adoptive placement had been located.

¶ 8 The contested severance hearing was conducted in late March and early April 2006. ADES presented one witness, the case manager. The case manager testified that Mother and Father had been offered random drug testing, psychological evaluation, parenting classes, visitation, and a housing subsidy. She testified that Father had started to engage in the services but then was incarcerated, and that he did not maintain contact with Child. She also testified Mother had been non-compliant, and, while she did have visits with the child, she did not consistently attend them, and that throughout the case it had been difficult to maintain contact with her, as she resided inconsistently at the address she had provided. The case manager further testified that the domestic violence between Mother and Father had continued throughout the case. Finally, the case manager testified that the child was in a prospective adoptive placement, was adoptable, and it was in the child's best interests to sever his existing parent-child relationships. Counsel for Mother asked what the alleged grounds for termination were before he cross-examined the case manager about a referral for substance abuse counseling.

¶ 9 Mother testified on her own behalf. Mother testified that she had undergone an assessment, a psychological evaluation, and counseling during February 2006, and that

---

**2.** The family with whom Child was placed maintained consistently throughout the proceedings that they were not interested in adopting Child.

**3.** Counsel for ADES.

**4.** Counsel for Child.

those services were ongoing. During direct examination, the following exchange occurred between Mother and her counsel:

Q   Did you call me before the hearing and ask me to subpoena anybody?

A   No. I didn't. I didn't understand that I was supposed to subpoena stuff. I don't understand court things at all.

Q   When is the last time you called me at my office?

A   I called you—messages twice last week. I haven't talked to you, personally, until today.

Q   Okay. I don't have any record of any messages last week. I keep a permanent log of all messages.

A   And I talked to your secretary last week.

Q   And that could be why because she doesn't necessarily write that down.

A   I did talk to her, and she was the one that told me to call the court's secretary and find out today was court; and, then, yesterday, Arsinia called, and I talked to her yesterday about five, 5:30.

Q   You were in court last, I believe, in December, when the judge ordered that your rights be—a petition to sever your rights be filed?

A   Yes, I was, sir.

Q   And you didn't know that that was going to happen?

A   I did know, but I didn't really understand until I started investigating it more on the computer about what exactly was going on.

* * *

Q   Before court, I asked you if you were doing U.A.'s and you indicated you have done 23 of them?

A   Yes, I have, sir, and I have a box of them that's out in my storage that I should have went through before today, but I've got the copies of them in the file at my storage.

Q   The judge indicated before court to me and the other attorneys that he would give you an opportunity before he ruled to provide those documents?

A   All right.

Q   Do you understand you'll have an obligation to provide them, and you can give them to me or give them to the court?

A   Yes, sir, I do.

* * *

Q   You've had three counseling sessions and two evaluation sessions?

A   And two evaluations; and, then, they wait two weeks for your appointment, and you got to go two weeks again, and two weeks again.

Excuse me. I'm sorry

Q   You need to go there tomorrow and get them to give you a record of that and provide it to me.

A   Okay.

Q   You understand that?

A   Yes, sir, I do.

Q   If you don't do that tomorrow, the judge isn't going to listen to that.

A   All right.

Q   This is on the record—

A   Okay,

Q   —So if I don't see it, I'll presume it doesn't exist—

A   Okay.

Q   —Well, more importantly, the judge will presume that.

ADES, Father, and the court questioned Mother.

¶ 10 Father also testified on his own behalf. He stated that, while in prison, he had completed a parenting class and an anger management class.

¶ 11 After all witnesses had testified, counsel for Mother requested another hearing before the court ruled. ADES argued that, regardless of the veracity of Mother's testimony, the grounds for severance had been met, as Mother had done nothing between April and January of the prior year. The court scheduled a status hearing for the following week, and informed Mother she could present her documentation through counsel, and that he intended to rule at that time.

¶ 12 Mother did not appear at the status hearing. Instead, she called the court forty-five minutes before the hearing to request a continuance, but did not give a reason. The

court declined to continue the hearing and told her she needed to come to court for the hearing. When she did not appear at the hearing, the court inquired about her contact with counsel. Counsel responded:

> Your Honor, [Mother] has not contacted me or my office since leaving court. We left it that she said she had some documentation that might impact the court's ruling. She has not provided that to me. Although I do understand from CPS they did check it from Ms. Johnson, that she did do an assessment at Excel I think in January. But she did do that, but we have no other documentation of anything.
>
> The Court: All right. Let me hear from—
>
> Mr. Crimmins: Also, [Mother], I just checked my messages again, has not contacted my office all day about a continuance or for any other purpose.
>
> The Court: Ms. Taylor?
>
> Ms. Taylor: Judge, we did try to verify what—some of what mom said. We do know that she did get an assessment done in January, that she was supposed to—
> * * *
> —start services coming up. Hasn't started any group services. She has not done any UAs though CCS, Excel, or through CPS.
>
> The Court: Okay. All right.
>
> Mr. Crimmins: The mother claim[s] she had records of 23 UAs. She did not bring forth those records, Judge.

The parties then proceeded to closing arguments. Mother's counsel presented closing argument as follows:

> Your honor, I think there was some evidence that [Mother] did comply to some extent and did attempt to do some services so the nine month time in care should not apply. It should have been the 12 month, therefore I request that severance been [sic] denied as to the grounds alleged.

¶ 13 The court granted the motion to sever as to both parents. The court specifically found that neither parent had remedied the problems leading to Child's out-of-home placement and there had been virtually no contact between the parents and Child since that time. The court further found that sev-

erance was in Child's best interests because it would allow Child to move into a permanent situation—the adoptive placement. Mother and Father timely appealed. This Court has jurisdiction pursuant to section 8–235 of the Arizona Revised Statutes (Supp. 2006).

## ANALYSIS

■ ¶ 14 In its motion to terminate Mother's and Father's parent-child relationships with Child, the sole grounds alleged by ADES for termination were that Child had been in an out-of-home placement for at least nine months, and Mother and Father had substantially neglected or willfully refused to remedy the circumstances leading to that placement. Likewise, the juvenile court based its order terminating their parental relationship solely on those grounds. We review the juvenile court's findings of fact in support of severance for clear error. *Anonymous v. Anonymous,* 25 Ariz.App. 10, 12, 540 P.2d 741, 743 (1975). We will reverse only if there is no reasonable evidence to support the court's findings. *Id.*

■ ¶ 15 The juvenile court may sever a parent-child relationship if ADES can show by clear and convincing evidence that: the child has been in an out-of-home placement under the supervision of the juvenile court for a period of nine months or longer, ADES has made a diligent effort to provide appropriate reunification services, and the parent has substantially neglected or willfully refused to remedy the circumstances that cause the out-of-home placement. A.R.S. § 8–533(B)(8)(a) (Supp.2006); *Pima County Juv. Action No. S–919,* 132 Ariz. 377, 377, 646 P.2d 262, 262 (1982). The circumstances causing the out-of-home placement for the purposes of section 8–533(B) are those in effect at the time of severance. *Marina P. v. Arizona Dep't of Econ. Sec.,* 214 Ariz. 326, 330, ¶ 22, 152 P.3d 1209, 1213 (App.2007).

■ ¶ 16 Before the parent-child relationship may be terminated, ADES must undertake measures to reunify the parent and child that offer a reasonable opportunity of success. *Mary Ellen C. v. Arizona Dep't of Econ. Sec.,* 193 Ariz. 185, 192, ¶ 34, 971 P.2d

1046, 1053 (App.1999). ADES is not, however, required to undertake futile rehabilitative measures. *Id.* Severance under section 8–533(B)(8)(a) is not appropriate when a parent has made "appreciable, good faith efforts to comply with remedial programs outlined by ADES," but may be appropriate in cases where the parent "disappears for months at a time and makes only sporadic, aborted attempts to remedy," the circumstances during the nine-month period. *In re Maricopa County Juv. Action No. JS-501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App.1994). At minimum, to avoid severance the parent should have demonstrated "something more than trivial or de minimus efforts at remediation." *Id.* at n.1.

▇▇▇ ¶ 17 Additionally, a parent-child relationship may only be severed upon a showing that termination is in the best interests of the child. A.R.S. § 8–533(B). ADES has the burden of proving severance is in the child's best interests by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005). In determining whether severance is in the child's best interests, the court may consider, among other factors, whether the child is adoptable, and whether the child's current placement is meeting the child's needs. *Audra T. v. Arizona Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998). The court is not required to consider alternative placements to determine which might be better. *Id.*

¶ 18 Father and Mother both argue there was insufficient evidence to support the juvenile court's order severing their parent-child relationships with Child. Mother additionally argues she was denied effective assistance of counsel. We first address Father's appeal and then address Mother's appeal.

**Father's Appeal**

¶ 19 On appeal, Father argues there was insufficient evidence to support that ADES engaged in diligent reunification efforts or that he substantially neglected or willfully failed to remedy the circumstances leading to Child's out-of-home placement.[5]

▇▇▇ ¶ 20 The record reflects ADES made a diligent effort to provide reasonable reunification services to Father. In its order, the court specifically noted that CPS had offered urinalysis screening, substance abuse treatment, parenting classes, psychological evaluations, domestic violence counseling, housing assistance, transportation, visitation, and DNA testing. The record supports this finding; all of these services were listed in the Family Reunification Plan and the case manager testified the services were offered to Father. As noted in the Family Reunification Plan, these services were targeted toward reunifying Father with Child, as the goals of the services included giving Father the skills necessary to parent Child effectively in a safe environment and maintaining a healthy relationship with Child. Thus, the record supports that ADES engaged in diligent efforts to reunify Father and Child.

▇▇▇ ¶ 21 The record further reflects sufficient evidence to support a finding of Father's substantial neglect or willful refusal to remedy the circumstances causing the out-of-home placement. Father argues the record demonstrates that, when Father went to prison, he became committed to changing his life, and therefore completed services in prison. Even assuming the truth of this statement, the record reflects that Father was sentenced to imprisonment on February 9, 2006. Thus, Father did not commence these services[6] until February 2006, almost ten months after Child was removed to an out-of-home placement and less than two months before the severance trial commenced. On the other hand, there is a wealth of evidence in the record to support that, during that initial ten-month period, Father substantially neglected or willfully refused to remedy the circumstances causing Child's out-of-home placement. There is no evidence in the record of any visitation between Father and Child at any point in this case, despite that

---

5. Father does not argue that there is insufficient evidence that severance is in Child's best interests.

6. We need not and do not express any opinion as to whether the programs Father participated in while in prison were sufficient to remedy the cause of Child's out-of-home placement.

the case manager twice scheduled supervised visits, both of which Father did not attend. Further, Father did not even make contact with CPS despite multiple requests to do so until October 2005, six months after Child was put in an out-of-home placement. Even when Father was in contact with CPS, he showed no interest in cooperating with CPS to complete services. Indeed, he initially *refused* to participate in services without DNA evidence of his paternity.

¶ 22 The record indicates that CPS made diligent efforts to reunify Father and Child, and that Father substantially neglected or willfully refused to remedy the circumstances leading to Child's out-of-home placement. We find no clear error in the court's order severing Father's parental relationship with Child.

### Mother's Appeal

¶ 23 Mother argues that there is insufficient evidence to support the juvenile court's order terminating her parental relationship with Child, and that she was deprived of effective assistance of counsel. Regardless of whether there is sufficient evidence in this record to support the order of termination, the ineffective assistance of counsel rendered on Mother's behalf casts doubt upon the legitimacy of the proceedings and their outcome as to her. We therefore vacate the order of severance as to Mother.

*Right to Effective Assistance of Counsel*

¶ 24 In termination proceedings, a parent has a vital interest in the accuracy and justice of the decision to terminate her parental relationship with her child. *Lassiter v. Dep't of Soc. Services of Durham County, North Carolina,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Effective, competent representation of parents in a termination hearing is paramount to the legitimacy of the proceedings and the outcome:

If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child

are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

*Id.* at 28, 101 S.Ct. 2153. *See also Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (counsel plays a critical role in adversarial system's ability to ensure just results). Juvenile court judges do not receive the complete and accurate information necessary to a well-informed decision unless counsel is competent and diligent. National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 22 (1995) ("Resource Guidelines").

¶ 25 We have recognized that an indigent parent has the right to appointed counsel both by statute and pursuant to constitutional guarantees of due process. *Daniel Y. v. Arizona Dep't of Econ. Sec.,* 206 Ariz. 257, 260, ¶ 14, 77 P.3d 55, 58 (App.2003). Further, both this Court and the Arizona Supreme Court have found that ineffective assistance of counsel in termination proceedings may constitute reversible error. *In re Gila County Juv. Action No. J–3824,* 130 Ariz. 530, 533, 637 P.2d 740, 743 (1981) *overruled on other grounds, In re Pima County Juv. Action No. S–919,* 132 Ariz. 377, 646 P.2d 262 (1982) *and superceded by statute on other grounds as recognized in Kelly R. v. Arizona Dep't of Econ. Sec.,* 213 Ariz. 17, 137 P.3d 973 (App.2006); *In re Maricopa County Juv. Action No. JS–4942,* 142 Ariz. 240, 242, 689 P.2d 183, 185 (App.1984).

*Standards for Determining Ineffective Assistance of Counsel*

¶ 26 The standard for determining what constitutes ineffective assistance of counsel, however, is an issue of first impression in this state. Both Mother and ADES urge an analysis pursuant to *Strickland v. Washington.* Under *Strickland,* assistance of counsel may be deemed ineffective if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and such performance prejudiced the defense. 466 U.S. at 687, 104 S.Ct. 2052. Courts in other jurisdictions are divided as to whether to

adopt the *Strickland* test or a different standard keyed to the interests at stake in termination proceedings. Susan Calkins, *Ineffective Assistance of Counsel in Parental–Rights Termination Cases: The Challenge for Appellate Courts*, 6 J.App. Prac. & Process 179, 213–222 (2004) ("Calkins").

¶ 27 We do not believe that the *Strickland* standard is appropriate in the context of termination proceedings. Termination proceedings are civil, rather than criminal, in nature. *Denise H. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 257, 259, ¶ 7, 972 P.2d 241, 243 (App.1998). Accordingly, the right to effective assistance of counsel in termination proceedings stems from Arizona's juvenile severance statute and the Due Process Clause, not the Sixth Amendment. *Daniel Y.*, 206 Ariz. at 260, 77 P.3d at 58. The interest at stake in a termination proceeding is the family's interest in the care and custody of the child, whereas the interest at stake in a criminal proceeding is one's liberty. *Lassiter*, 452 U.S. at 25–27, 101 S.Ct. 2153; *In re A.S.*, 320 Mont. 268, 87 P.3d 408, 413, ¶ 23 (2004); *In re Adoption of T.M.F.*, 392 Pa.Super. 598, 573 A.2d 1035, 1041 (1990) (plurality opinion). Thus, *Strickland's* Sixth Amendment test is inappropriate to determine whether a parent received ineffective assistance of counsel in termination proceedings.

¶ 28 Instead, the inquiry should be focused on the quality of assistance required to satisfy due process; that is, what fundamental fairness demands in a particular situation. *See Lassiter*, 452 U.S. at 24–25, 101 S.Ct. 2153. The benchmark of fundamentally fair procedure is whether an individual whose interests are at stake has the opportunity to be heard at a meaningful time in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Therefore, to be effective such that the standards of due process are met in a termination proceeding, appointed counsel's representation must have provided the parent with the opportunity to have been heard meaningfully. *See In re Geist*, 310 Or. 176, 796 P.2d 1193, 1205 (1990); *In re J.C., Jr.*, 781 S.W.2d 226, 228 (Mo.App.1989); *In re Moseley*, 34 Wash.App. 179, 660 P.2d 315,

318 (1983). Factors to consider in determining whether representation meets the standards of due process include counsel's: active participation in every critical stage of the proceedings; investigation of the procedural and factual history of the case; contact with the client; contact with witnesses prior to the hearing; review of documents pertaining to the case and the case file; and efforts at procuring evidence in support of the parent's defense. *See* Resource Guidelines at 22–23. This is not intended as an exhaustive list. The standard remains: if counsel's assistance or lack thereof deprived the parent an opportunity to be heard meaningfully, the parent received ineffective assistance of counsel.

¶ 29 The above considerations do not mean the court should second-guess the unsuccessful strategies of trial counsel with the benefit of hindsight. *See Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052. Omitted futile acts and reasoned tactical decisions in and of themselves will not form the basis of a successful claim for ineffective assistance of counsel in termination proceedings. *See State v. Meeker*, 143 Ariz. 256, 262, 693 P.2d 911, 917 (1984) ("disagreements as to trial strategy or errors in trial tactics will not support an effectiveness claim so long as the challenged conduct could have some reasoned basis"); *In re T.M.F.*, 573 A.2d at 1045 ("Trial counsel should be excused for not doing a useless act and wasting the time of the court and the expert."); *Geist*, 796 P.2d at 1205 (parent's "generalized, after-the-fact critique of ... counsel's tactical decisions" rejected as basis for claim of ineffective assistance of counsel in termination hearing).

¶ 30 In rejecting the *Strickland* prejudice standard, we recognize that other courts that have adopted a "fundamental fairness" standard for evaluating claims of ineffective assistance of counsel are divided about requiring a showing of prejudice parallel to that in *Strickland*. *See Calkins* at 226–28. We decline to adopt this additional requirement for several reasons.

¶ 31 First, in criminal proceedings, the defendant enjoys greater procedural protections, including a higher evidentiary burden (beyond a reasonable doubt) and the avail-

ability of post-conviction relief. *Calkins* at 231. These practical protections do not exist in the scope of parental termination proceedings. Thus, ineffective assistance of counsel is more likely to undermine the reliability of the final judgment in severance proceedings. Adding a requirement to show *Strickland* prejudice would be an unnecessary hurdle to ensure the reliability of the final judgment. *See Strickland,* 466 U.S. at 694–95, 104 S.Ct. 2052 (showing of prejudice must undermine confidence in the outcome of the case in light of burdens of proof and totality of evidence). Second, the ultimate goal is a fair trial. If counsel is ineffective, no fair trial has been received and the prejudice is the lack of a fair trial. *Calkins* at 230. Third, it is untenable that, upon a showing that counsel's performance was so deficient the parent was deprived of an opportunity to be heard in adversarial proceedings, she would not be able to establish that she suffered prejudice from a decision rendered without her interests voiced in a meaningful manner. *See* supra ¶ 27.

¶ 32 Finally, in severance proceedings we have the additional interest in expedited determination of a permanent placement for the innocent child. *See T.M.F.,* 573 A.2d at 1041. Criminal procedural protections against ineffective assistance of counsel would severely infringe on that interest. In criminal proceedings, a claim for ineffective assistance of counsel can only be established after the judgment becomes final because, before that time, a defendant could not show actual prejudice resulting from the representation. *See State ex rel. Thomas v. Rayes,* 214 Ariz. 411, 414, ¶ 13, 153 P.3d 1040, 1043 (2007). Thus, if there is ineffective assistance of counsel in a criminal trial, after having gone through a full trial, the judgment is vacated and the case must be retried. Such prolonged pro-

ceedings would detract from the interest in expedited permanent placement of a child.

¶ 33 Our reasoning does not mean that appellate courts should assume or readily find ineffective assistance of counsel simply because a parent in a severance proceeding on appeal can point to isolated instances of alleged failures of counsel to possibly adequately communicate with the client or to diligently prepare for trial. In those cases, a parent and the juvenile court may have a number of means to effectively create a record as to ineffective assistance of counsel prior to appellate review, including any party raising that issue before the superior court at the appropriate time or newly appointed appellate counsel seeking post-trial relief to have the superior court determine whether counsel's representation was so deficient as to deny the parent an opportunity to be heard meaningfully. *See* Ariz. R.P. Juv. Ct. 88(D) (permitting appointment of new appellate counsel in discretion of juvenile court presiding judge) and 46(E) (authorizing motions to set aside judgment in juvenile proceedings similar to motions under Ariz. R. Civ. P. 60).[7] As explained below, these alternative proceedings to determine ineffective assistance of counsel are unnecessary here because we conclude the record is clear, if not overwhelming, that Mother's counsel was ineffective.

*Application*

¶ 34 Mother argues her trial counsel did not engage in adequate preparation for the termination hearing, and that the record in fact demonstrates he did nothing beyond appearing in court at the appointed date and time of the hearing. Mother further points out that presenting only Mother's testimony was grossly inadequate to refute the case manager's testimony that Mother had not participated in any services.

¶ 35 We hold that counsel's representation did not pass constitutional muster. As of

---

7. Alternatively, an appellate court could remand the matter to the juvenile court for evidentiary hearings and findings on the effectiveness of appointed counsel. *See* Ariz. R.P. Juv. Ct. 88(F) and 91(F); *In re Condry's Estate,* 117 Ariz. 566, 568, 574 P.2d 54, 56 (App.1977). In *JS–4942,* we reversed and remanded the matter to the juvenile court for an evidentiary hearing to determine whether the parent had received adequate notice of the hearings against him and whether the parent had received effective assistance of counsel. 142 Ariz. at 242, 689 P.2d at 185. Given the need for expediency of a final determination in establishing permanency for the child, we disapprove of this approach in cases such as this when the only issue is the effectiveness of counsel's assistance and the record showing ineffective assistance is overwhelming.

December 2005, Mother had stated to counsel that she had participated in urinalysis screening. Apparently counsel did nothing to procure documentation of that screening; instead, he asked her to provide that documentation during his direct examination of her at the termination hearing. Likewise, counsel for Mother asked her to procure documentation of participation in counseling services on the date of the hearing, but apparently did nothing to obtain verification of those services on his own. Meanwhile, CPS, the party moving for termination of Mother's rights, verified Mother's participation in counseling services. Likewise, as counsel made a point of asking Mother whether she had called him to ask him to subpoena witnesses, it does not appear that counsel performed any independent investigation to determine what witnesses he could call in addition to Mother in her defense.[8] This, combined with counsel's apparent unfamiliarity with the case—as demonstrated by the fact that he had to inquire as to the grounds alleged for termination before he cross-examined the State's witness [9]—raises serious questions as to what, if any preparation counsel engaged in prior to the termination hearing.

¶ 36 In addition, the record indicates that counsel did not maintain adequate contact with Mother. The record indicates counsel did apparently have some discussions with Mother between the time Child was found dependent and the time of the termination hearing. These discussions were apparently less than substantive, as, at the termination hearing, Mother had no understanding of the severance procedure and had to conduct her own research. In addition, the record reflects Mother did not learn the date and time of the termination hearing from counsel, even after she called counsel's office. Instead, an office assistant told her to call the court. Mother had to call the court a week prior to the hearing for that information.

¶ 37 Equally troubling is counsel's conduct casting aspersion on Mother's diligence in remaining engaged with the proceedings. There is no apparent reason from Mother's standpoint why her counsel would raise her questionable sobriety at the outset of the December 2005 hearing and her apparent failure to attend a drug test at a subsequent hearing without the issue having been raised by any of the other parties. Furthermore, counsel's comment that, "I'm informed she is around because she does call the policemen occasionally" at the same hearing was unnecessary, derogatory, and further served to indicate that Mother was irresponsible when it came to maintaining contact both with himself and people in authority. Finally, when Mother testified as the only witness on her own behalf, counsel for Mother cross-examined her as to her contact with him, at times effectively testified as to whether he received messages from her, and then proceeded to lecture her about the necessity of producing documentation in her defense. Particularly problematic in the scope of this discussion was his remark that, if Mother did not produce documentation reflecting her participation in services, both he and the court would presume it did not exist. By so conducting himself before the court, counsel effectively acted as an advocate against Mother by propounding his own understanding of her neglect in the case.[10]

¶ 38 In proceedings where the weight of the government, in addition to Father's interests, and potentially the position of Child,

---

8. If, as ADES alleges, the record indicated that counsel for Mother had decided not to call witnesses in addition to Mother, such decision in and of itself may have been a reasonable strategic or tactical decision that would not form the basis for an ineffective assistance of counsel claim. Given that the record is replete with statements by counsel indicating his lack of preparation prior to the hearing, the record indicates that this was not a conscious decision of counsel not to call witnesses.

9. Counsel was apparently unfamiliar with the statutory grounds for termination as well, as he repeatedly referred to a "twelve-month ground"

for termination. See A.R.S. § 8–533(B)(8) (grounds for termination based upon child remaining in out-of-home placement for nine or fifteen months).

10. In analyzing this matter under the Strickland standard, both Mother and ADES have engaged in a prejudice analysis. While we have declined to adopt the Strickland test, we have weighed all of the factors and conclude that even if a Strickland prejudice element was required, the overwhelming evidence of ineffective assistance of counsel here leads us to conclude that Mother was prejudiced and we have no confidence in the outcome of the case and final determination

were against her, the only advocate to whom Mother could look to speak for her was her appointed counsel. Counsel has an ethical obligation to represent competently and with reasonable diligence and to maintain proper communication with the client. Ariz. Supreme Court Rule 41, E.R. 1.1, 1.3 and 1.4. When her counsel did not undertake the efforts necessary to speak meaningfully on her behalf, and instead actually spoke *against* her, the juvenile court became an inquisitorial, rather than adversarial, system of prosecution directed at her. This is not the means by which an accurate and just decision to terminate a parent-child relationship is procured under our system of justice. See *Lassiter,* 452 U.S. at 27–28, 101 S.Ct. 2153. "Each party must be competently and diligently represented in order for juvenile and family courts to function effectively." Resource Guidelines at 22. We therefore hold, given Mother's trial counsel's ineffective representation, the proceedings to terminate her parent-child relationship were not fundamentally fair and vacate the severance order as to her.

## CONCLUSION

¶ 39 There is sufficient evidence to support the juvenile court's order terminating Father's parent-child relationship with Child. We cannot uphold the termination order as to Mother, however, because she did not receive effective assistance of counsel. When counsel is ineffective, the entire adversarial process is undermined and what can appear to be clear and convincing evidence to support termination of the parental relationship may be illusory. Accordingly, we affirm the order of the juvenile court insofar as it relates to Father, but vacate that order insofar as it relates to Mother and remand the matter to the juvenile court for further proceedings.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PATRICK IRVINE, Judge.

based on counsel's deficient performance. *See*

466 U.S. at 687, 694–95, 104 S.Ct. 2052.