NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DANIEL R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.R., *Appellees*.

No. 1 CA-JV 15-0205
FILED 12-10-2015

---

Appeal from the Superior Court in Mohave County
No. B8015JD201304023
The Honorable Richard Weiss, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee*

Law Offices of Heather C. Wellborn PC, Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**G O U L D**, Judge:

¶1 Daniel R. ("Father") appeals from the juvenile court's termination of his parental rights to D.R. ("Child").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The Arizona Department of Child Safety[2] originally became involved after receiving hotline reports of loud verbal arguments between Father and Mother at the hospital after Child's birth on July 18, 2013. The report also noted that Father was handling Child in a "very rough manner" and Mother was refusing to care for Child. DCS permitted the parents to take Child home, but arranged to provide intensive in-home services. On July 19, a DCS caseworker visited the hotel room where parents were staying. At that time, Child was experiencing a medical issue, and the caseworker was concerned that parents were not properly caring for Child. Child eventually had to be taken to a hospital for treatment, and he was thereafter removed from parents' custody.

¶3 On July 24, 2013, DCS filed a dependency petition alleging Child was dependent as to both parents due to neglect. The petition noted the parents' history of domestic violence as evidenced by aggressive verbal arguments in front of hospital staff, and their inappropriate parenting behavior. DCS established a case plan of family reunification. The plan required Father to enroll in counseling to address his aggression and mental

---

[1] Mother's parental rights were terminated in a separate proceeding; Mother is not a party to this appeal.

[2] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

health issues, to successfully complete parenting classes, and to have a stable living environment and a legal means of income.

¶4            During the dependency Father failed to comply with the case plan.  He did not complete parenting classes or counseling and he did not find a stable home or employment.  Father lived in six different residences in the span of three months.  His participation in the case plan was further complicated by his relocation to New Mexico in March 2014.

¶5            On March 25, 2014, DCS filed a motion to terminate Father's parental rights.  The motion alleged two statutory grounds for termination; (1) Father had neglected or failed to protect Child from neglect (A.R.S § 8-533(B)(2)), and (2) Child, who is under three years of age, had been in an out-of-home placement for a cumulative total period of six months or longer, and Father substantially neglected to remedy the circumstances requiring Child to be in care despite DCS's diligent reunification efforts (A.R.S. § 8-533(B)(8)(b)).

¶6            The juvenile court held a severance trial and later issued findings of fact and conclusions of law.  The court determined DCS proved both statutory grounds for severance by clear and convincing evidence.  The court further found that termination of the parent-child relationship was in Child's best interests.  Father timely appealed.

## DISCUSSION

¶7            Father argues DCS failed to prove either of the statutory grounds by clear and convincing evidence.  He also claims DCS did not show by a preponderance of the evidence that severance was in Child's best interests.

I.      Standard of Review

¶8            To justify termination of the parent-child relationship, the juvenile court must find at least one of the statutory grounds by clear and convincing evidence; the court must also find that "termination is in the best interests of the child." *Mary Lou C. v. Ariz. Dep't. of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't. of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).  Accordingly, we review the juvenile court's termination of parental rights for an abuse of discretion and will affirm if

the court's findings are supported by reasonable evidence. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**¶9** Father argues that we should interpret DCS's decision to address only the "out-of-home placement" ground for severance in its answering brief as an admission of reversible error as to the neglect ground. However, DCS need only prove clear and convincing evidence supports one of the statutory grounds; having found that it did so, "we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3.

II. Statutory Ground: Out-of-Home Placement

**¶10** In order to terminate a parent's rights pursuant to A.R.S. § 8-533(B)(8)(b), DCS must prove (1) the child is under three years of age; (2) the child has been in an out-of-home placement for a cumulative total period of six months; (3) diligent efforts have been made to provide appropriate reunification services; and (4) the parent has substantially neglected or willfully refused to remedy the circumstances causing the child to be in an out-of-home placement. Only the third and fourth factors are at issue here; the first two factors are not in dispute.

**¶11** DCS has both a statutory and constitutional obligation to make reasonable efforts to reunify families. *Jordan C. v. Ariz. Dep't. of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 19 (App. 2009); *see also Donald W., Sr. v. Ariz. Dep't. of Econ. Sec.*, 215 Ariz. 199, 204-05, ¶ 16 (App. 2007) (stating that the department must take reunification measures that offer a reasonable opportunity of success). "[DCS] is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *In re Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Nor is it required to undertake futile rehabilitative measures. *Donald W.*, 215 Ariz. at 205, ¶ 16.

**¶12** The record supports the finding that DCS made diligent efforts to provide appropriate reunification services. The main concerns that led to Child's removal from Father's home were Father's lack of parenting skills, his unstable residence, lack of employment, and his involvement in relationships that exhibited domestic violence. DCS provided services to remedy those issues. Father was offered parenting classes at three different agencies and mental health counseling at two different facilities. He additionally received referrals for domestic violence classes. Father was also provided transportation and regular case

management. Upon his relocation to New Mexico, DCS additionally arranged for Skype visitation between Father and Child.

¶13 When a parent has failed to remedy the circumstances leading to removal, we focus on his or her "'effort to cure the circumstances . . . .'". *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 17 (App. 2015) (quoting *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 22 (App. 2007)). Additionally, we focus on the "circumstances existing at the time of the severance" rather than the initial dependency petition." *Marina P.*, 214 Ariz. at 329, ¶ 22. A parent's sporadic or aborted attempts to comply with offered services are insufficient to avoid severance. *Donald W.*, 215 Ariz. at 205, ¶ 16.

¶14 The record supports the juvenile court's finding that Father substantially neglected or willfully refused to remedy the circumstances causing Child to be removed. At the time of the severance Father had still failed to complete any program of parenting classes, domestic violence counseling, or mental health treatment. Father testified that he was participating in parenting classes and domestic violence counseling in New Mexico; however, he had not yet completed any programs, and he did not provide evidence to corroborate his testimony regarding his alleged participation in those services.

¶15 Furthermore, Father admitted that he did not participate in services while residing in Arizona, and it was not until his move to New Mexico in March 2014 that he began to engage in services. Despite Father's purported involvement in services after leaving Arizona, the ICPC[3] worker in New Mexico continued to express concerns about Father's mental health and stability as late as November and December of 2014. He reported that Father had checked himself into the psychiatric hospital, he had admitted to having frequent suicidal ideations, and he had recently been cited for a DUI.

¶16 We note that Father was able to obtain stable housing with his mother in New Mexico. However, Father testified he could not care for Child without the assistance of his family, and his Mother told the ICPC worker during a home study that she was not willing to take care of Child and she would only minimally assist Father.

---

[3] "ICPC" refers to the Interstate Compact on the Placement of Children, which has been adopted by Arizona. *See* A.R.S. § 8-548.

III.     Best Interests

**¶17**          Upon finding one of the statutory grounds for severance, the juvenile court must also find that termination of the parent-child relationship is in the child's best interest. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Id.*

**¶18**          The record supports the juvenile court's finding that severance was in Child's best interests.  The evidence shows that Child's current placement was meeting all of his needs and was willing to adopt him.  The record also supports the court's determination that Child would be harmed by continuing his relationship with Father because Father was unable to provide for Child's basic needs, including providing a safe and stable home.

## CONCLUSION

**¶19**          For the reasons above, we affirm the juvenile court's order terminating Father's parental rights to Child.



Ruth A. Willingham · Clerk of the Court
FILED: ama