NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BRENDA B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.S., N.S., *Appellees*.

No. 1 CA-JV 16-0162
FILED 11-1-2016

---

Appeal from the Superior Court in Maricopa County
No. JD527935
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

---

COUNSEL

Gates Law Firm L.L.C., Buckeye
By S. Marie Gates
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

---

J O N E S, Judge:

¶1          Brenda B. (Mother) appeals the juvenile court's order terminating her parental rights to B.S. and N.S. (the Children), arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence.  For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2          In August 2014, after receiving a report stating N.S. tested positive for methamphetamines at birth, DCS filed a petition alleging the Children were dependent as to Mother on the grounds of substance abuse and neglect.[2]  The juvenile court granted DCS temporary legal custody of the Children but ordered they remain in the physical custody of Mother, who then asked the Children's adult half-sister to assume temporary physical custody of the Children.  DCS agreed with the Children's placement in kinship foster care, and, in September 2014, the court ordered the change in physical custody.

¶3          After a contested hearing, the juvenile court adjudicated the Children dependent and set a case plan of family reunification.  The court

---

[1]     We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]     The petition also alleged the Children were dependent as to their father on the same grounds of substance abuse and neglect.  He failed to appear at the termination hearing, and his parental rights were terminated in April 2016.  He did not challenge that determination, and neither he, nor the couple's third child, *see infra* ¶ 6, are parties to this appeal.

ordered DCS to provide Mother services to treat her substance abuse, including urinalysis testing, substance abuse treatment, and a parent-aide.

¶4 In May 2015, the DCS case manager reported Mother had not been participating in substance abuse treatment and was "closed out due to noncompliance." Moreover, Mother had not fully complied with her urinalysis testing and failed to maintain contact with her parent-aide. In light of Mother's "lack of engagement in treatment" and the length of time the Children had been in out-of-home care, the case manager recommended the case plan change to severance and adoption "in order to provide the [C]hildren with permanency." In June 2015, the juvenile court granted DCS's oral motion to change the case plan.

¶5 DCS then moved to terminate Mother's parental rights on the grounds that: (1) Mother was unable to discharge parental responsibilities because of a history of chronic abuse of dangerous drugs that could continue for a prolonged, indeterminate period; (2) the Children, both under three years of age, had been in an out-of-home placement for six months or longer, and Mother had refused to participate in reunification services offered by DCS; and (3) Mother had substantially neglected or willfully refused to remedy the circumstances causing the Children to be in an out-of-home placement for a cumulative period of nine months or longer. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3), (8)(a)-(b).[3] The juvenile court scheduled a contested termination hearing for April 2016.

¶6 In the meantime, DCS notified the juvenile court that the Children's half-sister had allowed Mother to have unsupervised contact with the Children in violation of the terms of the kinship placement agreement, and the Children were subsequently placed in a licensed foster home. After initially failing to participate in substance abuse treatment, Mother enrolled herself in a different treatment program in November 2015; Mother failed again to fully engage in the program and tested positive for methamphetamine in December 2015. One month before her scheduled termination hearing, Mother gave birth to a third child who, like N.S., was born substance-exposed to methamphetamine.

¶7 At the termination hearing, the DCS case manager testified Mother "has yet to fully address her substance abuse issues," even though her "case ha[d] been going on for almost two years." The case manager explained that although Mother's parent-aide reported that "things were

---

[3] Absent material changes from the relevant date, we cite a statute's current version.

going well [and] Mom appeared bonded to the [C]hildren," Mother was not consistent in attending visits or participating in drug testing or treatment sessions because "she did not believe her substance abuse affected the [C]hildren." The case manager added that the Children's "current placement [wa]s willing to adopt them" and opined that "Mother is unable to discharge her parental responsibilities due to a history of abusing methamphetamine . . . [without] demonstrat[ing] an extended period of sobriety."

¶8         After taking the matter under advisement, the juvenile court determined DCS had made reasonable efforts to reunify Mother with the Children and had proved by clear and convincing evidence severance was warranted based upon Mother's history of chronic substance abuse and the length of time the Children had been in an out-of-home placement. *See* A.R.S. § 8-533(B)(3), (8)(a)-(b). The court also found that severance was in the Children's best interests by a preponderance of the evidence and entered an order terminating Mother's parental rights. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶9         The juvenile court may terminate an individual's parental rights if it finds, by clear and convincing evidence, that DCS "made a diligent effort to provide appropriate reunification services," and "[t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. 8-533(B)(8)(a); *see also* Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The court must also find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Mother does not dispute the length of time the Children were in out-of-home care,[4] the diligence of DCS's efforts, or that severance

---

[4]        Although Mother argues the juvenile court's finding that the Children had been in out-of-home care since August 5, 2014, is erroneous, she does not develop this argument. Moreover, the record reflects the Children had been in out-of-home care since at least September 4, 2014, or nineteen months before Mother's termination hearing — and well over the nine-month statutory minimum established by A.R.S. § 8-533(B)(8)(a).

was in the Children's best interests. Instead, she argues the court's finding that she substantially neglected or willfully refused to remedy the circumstances that caused the Children to be in an out-of-home placement was clearly erroneous because, she contends, "inconsistently participating doesn't arise to the level of substantially or willfully neglecting participation in services."

¶10 Termination of parental rights under A.R.S. § 8-533(B)(8)(a) "is not limited to those who have *completely* neglected or willfully refused to remedy such circumstances" causing out-of-home placement. *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). Parents who make "appreciable, good faith efforts to comply with remedial programs" will not be subject to termination under A.R.S. § 8-533(B)(8)(a). *Id.* "However, when a party . . . makes only sporadic, aborted attempts to remedy her addiction in that first year, a trial court is well within its discretion in finding substantial neglect and terminating parental rights on that basis." *Id.; see also Donald W., Sr. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 199, 205-06, ¶ 21 (App. 2007) (affirming termination of parental rights where evidence indicated the father did not visit with the child, contact the DCS caseworker, or cooperate with services in the ten months immediately following the child's removal).

¶11 We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a court's termination order "unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

¶12 The record reflects DCS provided Mother with numerous services, most notably random urinalysis testing, substance abuse treatment, and parent-aide services, after N.S. was born substance-exposed to methamphetamine in July 2014. Between September 2014, when the Children were relocated to an out-of-home placement, and mid-November 2014, Mother missed six of sixteen drug tests and tested positive for amphetamines five times. After her first referral for parent-aide services expired around May 2015, her second and third referrals closed out unsuccessfully because Mother did not attend consistently and was

unlikely to be able to apply the requisite parenting skills in an unsupervised setting.

¶13 When DCS moved to terminate her parental rights in July 2015, Mother advised she was pregnant with a third child and also tested positive for methamphetamine. She was closed out of substance abuse treatment for noncompliance, and, after reenrolling in a different treatment program in November 2015, she continued to miss group sessions and drug tests. Thereafter, in December 2015, Mother tested positive for methamphetamine, again while pregnant. Finally, in March 2016, just one month before the termination hearing and eighteen months after the Children were first removed from her care, Mother's third child was born substance-exposed to methamphetamine.

¶14 Although the DCS case manager acknowledged Mother has some parenting skills and, at times, received positive feedback from her parent-aides, the bulk of the record demonstrates Mother made only sporadic, aborted attempts to participate in the services needed to address her substance abuse and reunify with the Children. Here, reasonable evidence supports the juvenile court's finding that Mother substantially neglected to remedy the chronic use of methamphetamine that caused the Children to be in an out-of-home placement since September 2014.[5]

## CONCLUSION

¶15 The juvenile court's order terminating Mother's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] Because reasonable evidence supports the juvenile court's conclusion that severance was warranted based upon the length of time the Children were in out-of-home care, we need not address Mother's claims pertaining to other statutory grounds. *Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.") (citations omitted).