IN THE MATTER OF THE PARENTAL RIGHTS AS TO
N.D.O., T.L.O., AND T.O.

LETESHEIA O., AKA LATESHEIA O., APPELLANT, v. THE STATE OF NEVADA, DIVISION OF CHILD AND FAMILY SERVICES, DEPARTMENT OF HUMAN RESOURCES, RESPONDENT.

No. 42937

July 14, 2005                                    115 P.3d 223

---

*Mills & Mills* and *Gregory S. Mills,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, and *Dennis C. Wilson,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, PARRAGUIRRE, J.:

In considering this appeal, we necessarily examine when a constitutional right to counsel exists in the context of a parental rights termination proceeding, for without this constitutional right, no ineffective-assistance-of-counsel claim will lie. We conclude that the right to counsel must be assessed on a case-by-case basis, consistent with the United States Supreme Court's decision in *Lassiter v. Department of Social Services.*[1] As no right to counsel exists in this case, we do not reach the claim of ineffective assistance of counsel.

### FACTS

Appellant Letesheia O. challenges the termination of her parental rights to her three children. Her two older children have lived outside of Nevada with their maternal grandmother for most of their lives. Letesheia moved to Las Vegas with her youngest child when the child was 3 months old. Thereafter, Letesheia was convicted several times for theft and sentenced to jail time and house arrest. Letesheia's two aunts, who reside in Las Vegas, cared for her youngest child during Letesheia's absence. The youngest child was removed from Letesheia's care once due to physical abuse.

Six years after Letesheia moved to Las Vegas, her two older children joined her. Within less than a year, the State had removed all three children from Letesheia's home several times due to physical abuse and neglect. After Letesheia failed to substantially comply with her court-mandated case plan, all three children were placed in the custody of their maternal grandmother in Mississippi. State agencies worked with Letesheia to develop a new case plan. Letesheia agreed to take parenting, substance abuse and domestic violence classes and to participate in counseling, but she only minimally complied with her case plan. Moreover, Letesheia also was stealing in order to fund her cocaine habit and subsequently was arrested on more than 30 counts of theft. She later escaped from prison and appeared at her caseworker's office to inquire about her children. Police arrested Letesheia, and she remained in custody throughout the parental rights termination pro-

---

[1]452 U.S. 18 (1981).

ceedings. At the time of the proceedings, she had been incarcerated for about 12 of the 18 months since her children had been placed with their grandmother.

The district court granted the State's petition to terminate the parental rights of Letesheia and the putative father. The court found that the State proved by clear and convincing evidence the statutory parental fault grounds of unfitness, failure of parental adjustment and token efforts to avoid being an unfit parent. The court further determined that termination of parental rights is in the children's best interests, so that their maternal grandmother may adopt them. Letesheia appeals.

## DISCUSSION

Letesheia argues that she received ineffective assistance of counsel because her trial attorney failed to object during trial, despite many hearsay statements made by the Division of Child and Family Services (DCFS) investigator and case manager about the children's bond with their grandmother. She also notes that counsel did not object to the State's questioning of Letesheia about the details of her felony convictions.

NRS 128.100(2) provides the district court with the discretion to appoint counsel for an indigent parent in parental rights termination proceedings. Recent precedent may have generated confusion as to whether, and when, a right to counsel exists. In *Matter of Parental Rights of Weinper,* this court noted that other states have determined that procedural due process for termination proceedings requires: "(1) a clear and definite statement of the allegations of the petition; (2) notice of the hearing and the opportunity to be heard or defend; and (3) the right to counsel."[2] Without explicitly stating that due process in Nevada termination proceedings requires that the parent be afforded these rights, we determined that the parent in *Weinper* had been afforded all of these enumerated rights.[3]

In two subsequent opinions, this court stated that a parent must be afforded the rights described in *Weinper,* including the right to counsel, in order to satisfy due process.[4] However, we now clarify

---

[2]112 Nev. 710, 713, 918 P.2d 325, 328 (1996), *superseded by statute on other grounds as stated in Matter of Parental Rights as to N.J.,* 116 Nev. 790, 798-800, 8 P.3d 126, 131-32 (2000); *see also* U.S. Const. amend. XIV, § 1; Nev. Const. art. 1, § 8(5).

[3]*Weinper,* 112 Nev. at 713, 918 P.2d at 328.

[4]*Matter of Parental Rights as to Bow,* 113 Nev. 141, 150-51, 930 P.2d 1128, 1134 (1997) (quoting *Weinper* and explaining that "[t]his court has stated that

that no absolute right to counsel in termination proceedings exists in Nevada. Our statute contemplates a case-by-case determination of whether due process demands the appointment of counsel.

In *Lassiter v. Department of Social Services,* the Court held that the Fourteenth Amendment does not require the appointment of counsel in all termination proceedings.[5] The Court reviewed the due process evaluation propounded in *Mathews v. Eldridge,* holding that a court must balance the private interests at stake, the government's interest and the risk that the procedures used will lead to erroneous decisions.[6] The Court noted that a parent's right to the companionship, care, and custody of her children is an important interest that warrants deference absent the State's strong, countervailing interest in protecting children.[7] The Court explained that because the State and the parent at least theoretically share an urgent concern for the child's welfare, both parties may have a strong interest in appointed counsel.[8]

However, the Court concluded that because " 'due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed,' " appointment of counsel is not per se required in all termination proceedings.[9] In explaining that no bright line rule exists, the Court reasoned that the standards of proof and evidentiary issues in a termination proceeding often are not complicated, though also acknowledged that parents with little education or court experience may have difficulty presenting a case, particularly when expert medical or psychiatric testimony is involved.[10] Although the Court concluded that the parent in *Lassiter* was not entitled to counsel because her case was not particularly complex, nor was expert testimony involved, the Court acknowledged that appointment of counsel is generally favored:

as a matter of due process, 'parents are entitled to: (1) a clear and definite statement of the allegations of the petition; (2) notice of the hearing and the opportunity to be heard or defend; and (3) the right to counsel' "), *superseded by statute on other grounds as stated in Matter of Parental Rights as to N.J.,* 116 Nev. at 798-800, 8 P.3d at 131-32; *Matter of Parental Rights as to Daniels,* 114 Nev. 81, 88, 953 P.2d 1, 5 (1998) (stating that the court in *Weinper* had examined due process in other jurisdictions and noted that parents have a right to counsel in termination proceedings, and then considering whether the right to counsel attaches to any earlier proceedings), *superseded by statute on other grounds as stated in Matter of Parental Rights as to N.J.,* 116 Nev. at 798-800, 8 P.3d at 131-32.

[5]452 U.S. 18, 31 (1981).

[6]424 U.S. 319, 335 (1976).

[7]*Lassiter,* 452 U.S. at 27.

[8]*Id.* at 27-28.

[9]*Id.* at 31 (quoting *Gagnon v. Scarpelli,* 411 U.S. 778, 788 (1973)).

[10]*Id.* at 29-30.

''[i]nformed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but in dependency and neglect proceedings as well.''[11]

Thus, after *Lassiter,* no absolute right to counsel exists under the United States Constitution's Fourteenth Amendment in parental rights termination proceedings. However, at a minimum, the states must balance the interests according to the *Mathews* test to determine if due process demands counsel. NRS 128.100 allows for that due-process balancing.

In this case, the district court appointed counsel to represent Letesheia without any due process analysis. We therefore examine whether the specifics of Letesheia's termination proceeding mandated that she receive the assistance of counsel in order to ensure due process. Because the right to effective assistance of counsel derives only from a constitutional right to counsel, if Letesheia did not have a constitutional right to counsel, her ineffective-assistance claim must fail.

Clearly, Letesheia has a strong interest at stake in proceedings to terminate her rights to her children. We have characterized parental rights termination as a ''civil death penalty'' because legal termination severs the parent-child relationship.[12] The State also has a strong interest in a just and correct determination as it seeks to protect Letesheia's children from abuse and neglect and ensure that they have a stable family life. We expect that both the parent's interests and the State's interests will almost invariably be strong in termination proceedings.

Thus, we turn to the risk of an erroneous decision. As in *Lassiter,* case workers testified about the events that led to the placement of Letesheia's children with their grandmother, as well as Letesheia's progress on her case plan. The DCFS reports documented physical abuse and neglect of her children, including abuse and neglect petitions, and ongoing domestic violence. These reports showed that DCFS removed Letesheia's children from her care four times between August 2000 and May 2002. The reports, as well as caseworker testimony, indicated that the children were happy living with their grandmother and wanted to stay with her.

In raising her ineffective-assistance claim on appeal, Letesheia points out that the record reflects no objections by her attorney when the DCFS investigator and case manager testified that the children told them that they were happy living with their grand-

---

[11]*Id.* at 33-34.

[12]*Drury v. Lang,* 105 Nev. 430, 433, 776 P.2d 843, 845 (1989).

mother, wanted to remain with her, had a large extended family near their grandmother in Mississippi, and that the grandmother had expressed a desire to adopt the children. Neither the children nor the grandmother were present at the trial, and the testimony by the State caseworkers as to the grandmother's and children's statements constituted hearsay.[13] However, these statements appeared in the reports that DCFS is required to complete and submit to the district court; the court monitors the children and parents through these reports. An objection to the admission of these hearsay statements would have been unsuccessful because the statements already formed part of the district court record. Whether or not Letesheia had received assistance of counsel, the hearsay statements could not have been kept out of the proceeding.

Letesheia also argues that her counsel was ineffective in failing to challenge the admission into evidence of her previous convictions. As in our discussion regarding the hearsay statements, Letesheia's counsel had no role in whether details of Letesheia's convictions were admitted into evidence. We previously have explained that ''[w]hen considering a parent's incarceration in termination proceedings, the district court must consider the nature of the crime, the sentence imposed, who the crime was committed upon, the parent's conduct toward the child before and during incarceration, and the child's specific needs.''[14] As the district court specifically is directed to consider the details of the parent's convictions, Letesheia's counsel was powerless to prevent the admission into evidence of information surrounding Letesheia's felony convictions. Again, whether or not Letesheia had received assistance of counsel, NRS 128.106(6) dictates that the court consider details of her previous convictions.

We identify no particular intricacies of Letesheia's case that would undermine confidence in the result the district court reached. The Court in *Lassiter* noted that cases that require expert testimony may be difficult to navigate without counsel. In Letesheia's case, no expert testimony was offered.[15] Letesheia herself testified about her long-term cocaine addiction. The evidence the State presented to argue that termination of parental rights was warranted consisted of court-mandated DCFS reports that reflected physical abuse and neglect and little progress toward reunification, as well as Letesheia's criminal convictions. Particularly in light of

---

[13]*See* NRS 51.035.

[14]*Matter of Parental Rights as to J.L.N.*, 118 Nev. 621, 628, 55 P.3d 955, 960 (2002); *see also* NRS 128.106(6).

[15]We note that Letesheia's counsel called a therapist who had met with Letesheia only a few times and who offered general observations that with therapy Letesheia could learn to parent appropriately.

the fact that this evidence was admissible over any objection, we determine that nothing in the record points to a high risk of an incorrect decision.

We emphasize that in many instances, including cases that involve medical, psychiatric or other expert testimony, complex facts or evidentiary questions, or a parent who for another reason is unable to represent herself, appointed counsel may be required to satisfy due process. However, balancing the interests involved in this case reveals that Letesheia was not constitutionally entitled to counsel. This conclusion precludes consideration of her ineffective-assistance-of-counsel claim.

We have considered Letesheia's remaining claims of error and find that they lack merit. Substantial evidence supports the district court's findings of parental fault on the grounds of unfitness,[16] failure of parental adjustment,[17] and token efforts to avoid being an unfit parent,[18] and that termination of parental rights served the children's best interests.[19]

## CONCLUSION

We conclude that, though the district court properly exercised its discretion by appointing counsel, Letesheia was not constitutionally entitled to counsel. Balancing the interests, both the State and Letesheia had a very strong interest in the correct result. Because the evidence the State presented is evidence that the district court must consider in parental rights termination proceedings, no significant risk of an erroneous decision existed in this case. Due process did not mandate appointment of counsel, and thus we cannot reach Letesheia's claim of ineffective assistance of counsel. Further, substantial evidence supports the district court's judgment that termination of Letesheia's parental rights was warranted based on parental fault and the best interests of the children. Accordingly, we affirm the district court's order terminating the parental rights of Letesheia O.

BECKER, C. J., ROSE, MAUPIN, GIBBONS, DOUGLAS and HARDESTY, JJ., concur.

---

[16]NRS 128.105(2)(c).

[17]NRS 128.109(1)(b).

[18]NRS 128.109(1)(a).

[19]NRS 128.109(2). We note that the statutory presumptions set forth in NRS 128.109 are rebuttable. *J.L.N.*, 118 Nev. at 626, 55 P.3d at 958. However, Letesheia failed to present sufficient rebuttal evidence.