IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

NOV -7 2007

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| JOHN M., | ) | |
| | ) | 2 CA-JV 2007-0029 |
| Appellant, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ARIZONA DEPARTMENT OF | ) | |
| ECONOMIC SECURITY and | ) | |
| SHANNON M., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. JD200600031

Honorable Joseph R. Georgini, Judge

AFFIRMED

---

Richard Scherb                                                                                    Florence
                                                                           Attorney for Appellant

Terry Goddard, Arizona Attorney General
  By William V. Hornung                                                               Tucson
                                                        Attorneys for Appellee Arizona
                                               Department of Economic Security

---

V Á S Q U E Z, Judge.

**¶1**        John M. appeals from the juvenile court's April 30, 2007, order, entered after

a contested severance hearing, terminating his parental rights to his daughter, Shannon, born

in October 2004, on the grounds that he had neglected or wilfully abused a child, A.R.S.

§ 8-533(B)(2), and had substantially neglected or wilfully refused to remedy the circumstances that had caused Shannon to be in an out-of-home placement for nine months or longer, A.R.S. § 8-533(B)(8)(a). On appeal, John maintains the termination order should be reversed on the ground of ineffective assistance of counsel. He contends his attorney's conduct denied him a meaningful opportunity to be heard, and therefore violated his right to due process, and that he is entitled to a new severance hearing.

**Background**

¶2          John does not challenge the sufficiency of the evidence presented at the severance hearing that supported the following course of events. John is Shannon's biological father, and Shannon's mother, Tiffany, is John's stepdaughter. Tiffany was fourteen years old when Shannon was born. After the Pinal County Sheriff's Department received and investigated a report about underage drinking at John's home during the last weekend in February 2006, John and his wife, Kitty M., Tiffany's mother, were arrested for public indecency, indecent exposure, and luring, exploiting, and furnishing harmful material to minors. The Arizona Department of Economic Security (ADES) removed Tiffany and Shannon from the home on February 27, 2006, and they have remained out of the home since then. They are currently placed with foster parents who wish to adopt them.

¶3          Before and after John's arrest, Tiffany and other children told detectives and employees of Child Protective Services that in late February 2006 and on other occasions they had been served alcohol at John's home; they had engaged in games of "truth or dare" with John and had exposed themselves while John photographed them; John and Kitty had "dance[d] naked" in front of them; and John had masturbated while the children watched.

2

According to Tiffany, sixteen-month-old Shannon had been present when these events occurred.  Tiffany also reported that she had been having sexual relations with John since she was eleven or twelve.

**¶4**        The state filed a dependency petition and petition to establish paternity in March 2006, and in June, John submitted to the dependency petition without contest, contending he was "willing but unable" to properly parent Shannon.[1]  At the permanency hearing, the juvenile court ordered that Shannon's case plan, as to John, would be severance of parental rights and adoption.  ADES filed a motion to terminate John's parental rights to Shannon in December 2006, alleging he had neglected or wilfully abused her.  A contested hearing on the motion commenced in April 2007.

**¶5**        When the severance hearing began, John was awaiting trial on fifty felony charges, including sexual conduct with a minor, sexual indecency, sexual exploitation of a minor, luring, providing harmful materials to a minor, and weapons offenses.  Consistent with the advice of his counsel, John did not testify at the severance hearing.  At the beginning of the hearing, John's attorney advised the juvenile court that he had "discussed . . . a number of different issues" with his client.  He said he would be objecting to exhibits attached to reports that had "not been substantiated," such as certain test results; he noted John's continuing objection to the court's refusal to disclose information about Shannon's placement; and he moved to continue the hearing until after the pending criminal charges were resolved, informing the court that John might also want new counsel appointed.  After

---

[1]Based on paternity tests, the court subsequently found John to be Shannon's biological father.

the juvenile court denied the motion to continue, John stated, "That's it," demanded that sheriff's officers "take [him] back," and left the courtroom. After the court ordered John to return to the courtroom and admonished him to remain, John asked that his attorney be removed from his case, contending that

> [Counsel] hasn't done anything. I sit here with a stack of discovery in front of me I have not had a chance to read through at all. He's never sent me one piece of discovery since he's been my attorney; therefore, I come in blind into this—this hearing, and yet everything that I ask for is denied, denied, denied.

¶6 After the court denied his request for new counsel, John asked the court to continue the hearing so he could personally review documents, telling the court, "I don't know what to say, Your Honor, because I haven't read the discovery. I don't know what's being said about me and I don't know what's not being said about me." The court denied the request and expressed its doubts about John's protests, noting:

> I'm sure you have some idea as to what the matters of this petition and motion are. You've been present at prior proceedings. You're aware of the dependency that was filed. I believe you have some idea as to why you're here.

¶7 At the end of the hearing, John's attorney orally moved to dismiss the proceeding on the ground that ADES had failed to show the acts had occurred in Pinal County. He also argued that Shannon had been thriving when she was removed from John's home; that no evidence suggested she had been physically abused; and that statements made by Tiffany and the other minors, while possibly sufficient to support a probable cause determination in John's criminal case, did not provide clear and convincing evidence to support termination of parental rights under § 8-533. The juvenile court denied John's

4

motion to dismiss and found ADES had sustained its burden of proving the grounds for terminating his parental rights that were alleged in its motion, as amended.[2]

## Discussion

¶8        On appeal, John does not identify specific trial errors made by counsel but argues only that he was "denied an adequate opportunity to be meaningfully heard because he was not consulted or prepared for the hearing by his appointed counsel." John recognizes that when reviewing ineffective assistance claims in criminal cases, Arizona courts employ the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and that under that test, a party must show both that counsel's representation fell below prevailing professional norms and that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690, 694, 104 S. Ct. at 2066, 2068. He maintains, however, that *Strickland*'s "Sixth Amendment test" is inappropriate for claims of ineffective assistance of counsel in termination proceedings because they are civil in nature and involve a parent's interest in the care and custody of his or her child, not the personal liberty interest at stake in a criminal trial. In support of his argument, John relies heavily on *Donald W., Sr. v. Arizona Department of Economic Security*, 215 Ariz. 199, 159 P.3d 65 (App. 2007), but the supreme court has since vacated relevant portions of the decision and redesignated the

---

[2]ADES amended its motion for termination of John's parental rights on March 8, 2007, and again during trial. As amended, the motion alleged that John had neglected or wilfully abused a child, *see* A.R.S. § 8-533(B)(2), and had substantially neglected or wilfully refused to remedy the circumstances that had caused Shannon to be in an out-of-home placement for nine months or longer, *see* § 8-533(B)(8)(a).

5

remaining portions as a memorandum decision. ___ Ariz. ___, ___ P.3d ___ (October 19, 2007). Consequently, we do not consider that decision. *See* Ariz. R. Civ. App. P. 28(c) (memorandum decision not regarded as precedent); Ariz. R. P. Juv. Ct. 88(G) (adopting Rule 28, Ariz. R. Civ. App. P.); *see also Walden Books Co. v. Dep't of Revenue*, 198 Ariz. 584, ¶¶ 20-23, 12 P.3d 809, 814 (App. 2000) (discussion of rule).

**¶9** In lieu of the *Strickland* standard, John proposes we consider whether a parent claiming ineffective assistance of counsel has been denied due process, which he frames as "an adequate opportunity to be heard in a meaningful manner," as the result of counsel's conduct. John contends counsel failed to communicate with him about the termination hearing and failed to provide him with copies of documents disclosed by ADES and that these alleged failures require reversal of the juvenile court's termination order. He does not attempt to show that his attorney's alleged inadequacies were material to the result of his termination hearing, and therefore prejudicial, but argues only, "[w]hen counsel is ineffective, the entire adversarial process is undermined."

**¶10** In its answering brief, ADES urges us to reject *Donald W.*; that is no longer an issue. ADES contends, in any event, that John's argument that a termination proceeding does not implicate the Sixth Amendment is a "distinction without a difference" that does not justify rejection of *Strickland*'s "reasoned, efficacious, and long-standing" test for evaluating an effective assistance of counsel claim. ADES urges us to apply the *Strickland* standard and, because John has failed to show how any alleged errors by counsel prejudiced his defense, affirm the juvenile court's termination order.

6

¶11　　　In *Arizona State Department of Public Welfare v. Barlow*, 80 Ariz. 249, 253, 296 P.2d 298, 300 (1956), our supreme court held the denial of a parent's request to be represented by retained counsel in a dependency hearing violated due process, and Division One of this court has relied on *Barlow* to conclude that appointment of counsel in a severance proceeding is not merely required by statute, but a matter "of constitutional dimension." *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, ¶¶ 12, 14, 77 P.3d 55, 58 (App. 2003). Since *Barlow* was decided, however, the Supreme Court has held that the Due Process Clause of the United States Constitution does not require appointment of counsel for every indigent parent facing termination of his parental rights. *Lassiter v. Dep't of Soc. Servs. of Durham County, N.C.*, 452 U.S. 18, 31-32, 101 S. Ct. 2153, 2161-62 (1981). Regardless of the origin of a parent's right to appointed counsel in Arizona, neither *Barlow* nor *Lassiter* addressed the question raised here: Does ineffective assistance of counsel justify reversal of a juvenile court's order terminating parental rights and, if so, under what circumstances?

¶12　　　Few Arizona cases have considered this question at all, and none has squarely addressed it. *Cf. Santa Cruz County Juv. Dep. Action Nos. JD-89-006 and JD-89-007*, 167 Ariz. 98, 101, 804 P.2d 827, 830 (App. 1990) (assuming without deciding that ineffective assistance of counsel "is properly raised in the context of a dependency proceeding"). We have previously affirmed a juvenile court's termination of parental rights where a parent failed to establish that her counsel's performance was both incompetent and prejudicial. *See In re Pima County Severance Action No. S-2397*, 161 Ariz. 574, 578, 780 P.2d 407, 411 (App. 1989) (counsel's failure to call certain witnesses appeared to be "sound tactical

7

decision"; no evidence to suggest prejudice). And, where a father appealed on the ground that he had been "improperly notified of the wrong [severance] hearing dates" and therefore denied due process, Division One of this court remanded the case to the juvenile court so that it could determine if the father "was not properly notified of the hearings or . . . was not given effective assistance of counsel." *In re Maricopa County Juv. Action No. JS-4942*, 142 Ariz. 240, 241-42, 689 P.2d 183, 184-85 (App. 1984). But no Arizona court has reversed a termination order, on the sole ground of ineffective assistance of counsel, based on the record on appeal. *But see In re Gila County Juv. Action No. J-3824*, 130 Ariz. 530, 532-33, 536, 637 P.2d 740, 742-43, 746 (1981), *overruled on other grounds, In re Pima County Juv. Action No. S-919*, 132 Ariz. 377, 646 P.2d 262 (1982) (reversal warranted by juvenile court's failure to appoint guardian ad litem for mother as required by statute; appointment of counsel did not constitute substantial compliance with statute where counsel was ineffectual).

¶13        Other states have reached varying conclusions about whether ineffective assistance of counsel provides a ground for relief in an appeal of a termination order and, if so, the appropriate means of evaluating such a claim. *Compare*, *e.g.*, *S.B. v. Dep't of Children & Families*, 851 So.2d 689 (Fla. 2003) (ineffective assistance claim recognized in appeal of termination order, where right to counsel grounded in state constitution, but not dependency order, where right to counsel only statutory); *In re Heather R.*, 694 N.W.2d 659, 664-65 (Neb. 2005) (no ineffective assistance of counsel claim in civil juvenile proceeding; allegation of inadequate representation assessed as due process claim to fundamentally fair procedure); *In re N.D.O.*, 115 P.3d 223, 224-25 (Nev. 2005) ("no

ineffective-assistance-of-counsel claim will lie" where counsel not constitutionally required under *Lassiter*; *Strickland* standard), *with In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003) (statutory right to counsel includes right to effective counsel; *Strickland* standard); *In re Geist*, 796 P.2d 1193, 1200-01 (Or. 1990) (statutory right to counsel "may prove illusory" without remedy for ineffective assistance; "fundamental fairness" standard).

¶14        We agree with ADES that we need not disregard the Supreme Court's analysis in *Strickland* simply because it involved consideration of the Sixth Amendment. *Strickland* did not rely on the Sixth Amendment to the exclusion of due process concerns, but recognized "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial . . . guarantee[d] . . . through the Due Process Clauses." *Strickland*, 466 U.S. at 684-85, 104 S. Ct. at 2063.    Thus, in severance proceedings, as in criminal cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069; *see also Lassiter*, 452 U.S. at 24-25, 101 S. Ct. at 2158 (due process resists precise definition but "expresses the requirement of 'fundamental fairness'"); *State v. Melendez*, 172 Ariz. 68, 71, 834 P.2d 154, 157 (1992) ("The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness.").

¶15        We do not agree, however, that distinctions between criminal trials and termination proceedings are necessarily irrelevant to the standard to be applied.   Unlike a criminal proceeding, which implicates the personal liberty interest of a criminal defendant, a termination proceeding involves more than a parent's fundamental liberty interest in the care, custody, and control of his child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 34, 110

9

P.3d 1013, 1018 (2005). The child's interests in stability, safety, security, and a normal family home are also at stake, *see id.*, as well as the "prompt finality that protects" those interests. *In re Pima County Juv. Action No. S-114487*, 179 Ariz. 86, 97, 101, 876 P.2d 1121, 1132, 1136 (1994); *see also Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513, 102 S. Ct. 3231, 3238 (1982) (denying federal habeas review of termination pursuant to state statute; "state's interest in finality is unusually strong"; uncertainty "detrimental to a child's sound development"); *Lassiter*, 452 U.S. at 32, 32 n.7, 101 S. Ct. at 2162 n.7 ("child-custody litigation must be concluded as rapidly as is consistent with fairness"; noting that "[child] cannot be legally adopted, nor can his status otherwise be finally clarified, until this litigation ends").

¶16　　　　The Pennsylvania Superior Court has identified other meaningful distinctions between criminal trials and severance proceedings, including procedural safeguards available in both:

> While the standard of proof, clear and convincing evidence, is less in termination proceedings than beyond a reasonable doubt in criminal proceedings, it is still quite high. Additionally, because of the doctrine of Parens Patriae and the need to focus on the best interest of the child, the trial judge, who is the fact finder, is required to be an attentive and involved participant in the process. While he must depend upon the litigants to present the evidence to establish the particular elements or defenses in the termination case, he is not limited to their presentations, and as in any custody case, he may require more than they present and direct further investigation, evaluations or expert testimony to assure him that the interests of the child and the respective parties are properly represented. Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings.

*In re Adoption of T.M.F.*, 573 A.2d 1035, 1042 (Pa. Super. 1990) (ineffective assistance of counsel claim prompts review of severance record; if proceedings fundamentally fair, order supported by evidence, and "result would unlikely have been different" in absence of counsel's alleged inadequacy, no remand or rehearing is warranted).

¶17 For the purpose of this case, we need not determine whether Arizona recognizes ineffective assistance of counsel as a separate ground for relief in an appeal of a termination order or resolves an allegation of counsel's inadequacies as a due process claim. Moreover, assuming Arizona does recognize a separate claim for ineffective assistance of counsel and, by analogy to *Strickland*, requires a parent to establish both incompetence and prejudice, *see Pima County No. S-2397*, 161 Ariz. at 578, 780 P.2d at 411, we need not consider here what might be required for a showing of incompetence.

¶18 This case is more readily resolved by John's failure to show any prejudice resulting from his counsel's performance. *Cf. State v. Atwood*, 171 Ariz. 576, 600, 832 P.2d 593, 617 (1992) (in criminal case, "[i]f an ineffectiveness claim can be rejected for lack of prejudice, the court need not inquire into counsel's performance"). We agree with the majority of states in concluding that no reversal of a termination order is justified by inadequacy of counsel unless, at a minimum, a parent can demonstrate that counsel's alleged errors were sufficient to "undermine confidence in the outcome" of the severance proceeding and give rise to a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland*, 466 U.S. at 692-94, 104 S. Ct. at 2067-68; *N.J. Div. of Youth and Family Servs. v. B.R.*, 929 A.2d 1034, 1038-39 (N.J. 2007) (collecting cases adopting *Strickland* standard for termination proceedings); *cf. Lassiter*, 452 U.S. at 32-33, 101 S. Ct.

11

at 2162 (failure to appoint counsel not denial of due process where counsel could not have made any "determinative difference" in result of severance hearing); *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶ 27, 118 P.3d 37, 43 (App. 2005) (failure to provide parent notice of right to jury trial in severance proceeding not fundamental error where parent presented no evidence that jury would have decided case differently).

**¶19** John has provided no basis for us to conclude that the severance proceedings in this case were fundamentally unfair; that the result of the hearing is unreliable; or that, had counsel conducted himself differently, the juvenile court would have reached a different result. We therefore affirm the juvenile court's termination of John's parental rights.


_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
JOSEPH W. HOWARD, Judge