# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL
RIGHTS AS TO: D.J.M., A MINOR,

No. 65659

DAMU M.; AND JESSICA W.,
Appellants,
vs.
STATE OF NEVADA DEPARTMENT
OF FAMILY SERVICES,
Respondent.

## ORDER OF AFFIRMANCE

This is an appeal from a district court order terminating appellants' parental rights. Eighth Judicial District Court, Clark County; Cynthia N. Giuliani, Judge.

Appellants Damu M. and Jessica W. are the biological parents of nine-year-old D.J.M. After a police search of Jessica W.'s home revealed drugs on the premises, respondent State of Nevada Department of Family Services (DFS) had D.J.M. removed from his parents' custody because of child abuse or neglect.

In February of 2010, the parents received case plans that identified the objectives they needed to complete for them to be reunited with their son. Since that time, both parents have struggled to comply with various components of their case plans.[1]

---

[1]Because the parties are familiar with the facts of this case, we will not elaborate on this history except as necessary for our disposition.

In May of 2012, DFS filed a petition to terminate appellants' parental rights. After a trial on the matter, the district court concluded that (1) Damu M. had abandoned D.J.M., (2) Damu M. and Jessica W. had neglected D.J.M., (3) Damu M. and Jessica W. were unfit parents, (4) Damu M. and Jessica W. failed to adjust their behavior, and (5) it was in D.J.M.'s best interests to terminate Damu M.'s and Jessica W.'s parental rights. Therefore, the district court granted DFS's petition. Both parents now appeal.

On appeal, both parents argue that there is not substantial evidence to support the district court's decision to terminate their parental rights, and that they were provided with ineffective assistance of counsel in the termination proceedings. We hold that substantial evidence supports the district court's findings of parental fault and that termination was in the best interests of the child. Furthermore, we hold that neither Jessica W. nor Damu M. had a constitutional right to counsel in this case, and thus, their ineffective assistance of counsel claims must fail.

*Substantial evidence supports the district court's decision to terminate Jessica W.'s and Damu M.'s parental rights*

A district court "must consider both the best interests of the child and parental fault" when "determining whether to terminate parental rights." *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 800, 8 P.3d 126, 132 (2000). Both standards must be proven by clear and convincing evidence unless a statutory presumption applies. *See id.* at 801, 8 P.3d at 133; *see also* NRS 128.090(2); NRS 128.109. The parties do not dispute that (1) D.J.M. had resided outside of his home "for 14 months of any 20 consecutive months," and (2) appellants failed to substantially comply with their case plans "within 6 months after . . . the

plan[s] [were] commenced." *See* NRS 128.109(1)(a), (b). Therefore, the following presumptions apply: the parents made token efforts to care for the child, the parents failed to adjust the circumstances that led to the child's removal, and the best interests of the child are served by termination. *See* NRS 128.109.

To rebut these presumptions, the parents had to establish by a preponderance of the evidence that termination was not in the child's best interests and that the alleged parental fault did not exist. *See In re Parental Rights as to A.L.*, 130 Nev., Adv. Op. 91, 337 P.3d 758, 761 (2014); *see also* NRS 47.180. In reviewing the district court's decision, we do "not substitute [our] own judgment for that of the district court," and we "will uphold termination orders based on substantial evidence." *In re N.J.*, 116 Nev. at 795, 8 P.3d at 129.

*Substantial evidence supports a finding that termination was in D.J.M.'s best interests*

A child's need for "'proper physical, mental and emotional growth and development are'" important considerations in determining a child's bests interests. *In re Parental Rights as to D.R.H.*, 120 Nev. 422, 433, 92 P.3d 1230, 1237 (2004) (quoting NRS 128.005(2)(c)). In addition, "[a]lthough the best interests of the child and parental fault are distinct considerations, [determining] the best interests of the child necessarily include[s] considerations of parental fault and/or parental conduct." *In re N.J.*, 116 Nev. at 801, 8 P.3d at 133.

D.J.M. was removed from his parents' care when he was three years old. D.J.M. is now nine years old, he has started attending school, and he has lived apart from his parents since his removal in 2009. D.J.M.'s chances of finding an adoptive resource become less promising as

he gets older, and the district court found D.J.M. had been "languishing" in foster care for four and a half years at the time of trial.

Throughout these four and a half years, Damu M. rarely visited D.J.M., sometimes going in excess of a year without seeing him. Damu M. made no attempt to contact D.J.M. while he was incarcerated or after he transitioned to a halfway house, despite the fact that testimony revealed he had access to a telephone in prison and had an attorney whom he could contact if he needed information regarding the children. Because of this lack of contact, the evidence showed that D.J.M. had no memories of Damu M. and had never shown curiosity about Damu M.'s whereabouts. Furthermore, Damu M. tested positive for drugs on multiple occasions and signed a confession acknowledging that he ingested cocaine during the pendency of the case in violation of the case plan objectives.

Jessica W.'s long history of drug use, coupled with her failure to test in August of 2013 and her lack of credibility on the stand suggests she has not fully addressed her substance abuse problems. In addition, the record is replete with instances where Jessica W. demonstrated her unreliability: during certain periods of time she failed to consistently visit D.J.M., she repeatedly failed to attend individual and group therapy sessions, DFS reports showed that the agency would sometimes go weeks without hearing from her, and organizations training parents to help their behaviorally challenged kids struggled to keep in contact with her. Furthermore, D.J.M.'s foster mother testified that D.J.M.'s attitude towards Jessica W. changed over time; although he used to wait for his mother at the visitation center with eager anticipation, he now sits calmly and exhibits only indifference when she does not show up. There was also evidence that suggests Jessica W. is not well equipped to deal with

D.J.M.'s behavioral outbursts, potentially due to her own mental health and anger issues.

Although Damu M. claimed he never had substance abuse problems, and although Jessica W. tested negative for drugs throughout most of 2013, we conclude that substantial evidence supports the district court's decision that Damu M. and Jessica W. failed to overcome the presumption that termination of parental rights best served D.J.M.'s interests.

*Substantial evidence supports a finding of parental fault*

Former NRS 128.105(2) (1999)[2] states the type of conduct that constitutes parental fault:

> (a) [a]bandonment of the child; (b) [n]eglect of the child; (c) [u]nfitness of the parent; (d) [f]ailure of parental adjustment; (e) [r]isk of serious physical, mental or emotional injury to the child if the child were returned to . . . the home of his or her parent or parents; [and] (f) [o]nly token efforts by the parent or parents: (1) [t]o support or communicate with the child; (2) [t]o prevent neglect of the child; (3) [t]o avoid being an unfit parent; or (4) [t]o eliminate the risk of serious physical, mental or emotional injury to the child.

The record reflects that Damu M. had no relationship with D.J.M., and that Damu M. would go without contacting D.J.M. for years at a time. Furthermore, Damu M. did not make any attempts to see or contact D.J.M. while incarcerated, or after he transitioned into a halfway house, despite the fact that he had access to a phone and an attorney. It is

---

[2]NRS 128.105 was amended and renumbered by the 2015 Legislature; the changes to the statute, however, do not affect our analysis. *See* 2015 Nev. Stat., ch. 250, § 3, at 1184-85.

not just the lack of contact with D.J.M. that is detrimental to Damu M.'s case—it is also the lack of *any effort* to contact D.J.M.

The most prominent issue Jessica W. has faced over the last five years has been her struggle to comply with her case plan. "The task in failure to adjust cases is to realistically evaluate the parent's efforts to adjust circumstances, conduct or conditions *within a reasonable amount of time* to justify the child's return home. The main concern is permanency of adjustment—*a child should not be held in limbo indefinitely.*" *In re Parental Rights as to Montgomery*, 112 Nev. 719, 729, 917 P.2d 949, 956 (1996) (internal quotation omitted) (emphases added), *superseded by statute on other grounds as recognized by In re N.J.*, 116 Nev. at 798-801, 8 P.3d at 131-33.

As mentioned earlier, there is some evidence to suggest that Jessica W. has not fully remedied her substance abuse issues. However, even assuming this aspect of her case plan was fulfilled, other aspects were not. Her communications with DFS were sporadic, and she failed to consistently visit D.J.M., oftentimes failing to call and explain her absence or lack of contact. Furthermore, Jessica W. failed to follow many of the reasonable recommendations made by DFS. For example, when Jessica W. failed to control herself or D.J.M. during her first group therapy session, DFS recommended that she undergo some individual therapy sessions before she continue with group therapy, and Jessica W. agreed. In addition, when DFS recommended that she undergo a mental health assessment because she claimed to suffer from ADHD, depression, and

potentially bipolar behavior, Jessica W. agreed. Jessica W. failed to follow through on these obligations.[3]

In sum, Jessica W. failed to make meaningful, reasonable and/or consistent efforts to adjust the circumstances that led to D.J.M.'s removal, and Damu M. has failed to support or communicate with D.J.M. For the foregoing reasons, we conclude that substantial evidence supports the district court's findings of parental fault, and thus, substantial evidence supports the district court's decision to terminate appellants' parental rights.

*Appellants do not have a constitutional right to counsel in this case*

A party may only bring an ineffective assistance of counsel claim if the party has a constitutional right to counsel. *In re Parental Rights as to N.D.O.*, 121 Nev. 379, 384, 115 P.3d 223, 226 (2005). Although this court has noted that "procedural due process for termination proceedings requires ... the right to counsel," we have subsequently clarified that there is "no absolute right to counsel in termination proceedings," and that NRS 128.100(2) "contemplates a case-by-case determination of whether due process demands the appointment of counsel." *Id.* at 382-83, 115 P.3d at 225 (internal quotation omitted); *see also* NRS 128.100 (a district court has discretion to appoint counsel for an indigent parent in a termination of parental rights proceeding).

---

[3]Although we recognize that additional, unwritten requirements to an individual's case plan may generate due process concerns, we reject Jessica W.'s argument that she was provided inadequate notice of the requirements for reunification in violation of her due process rights. The record reflects that Jessica W. was fully aware of DFS's recommendations that she obtain a mental health assessment and attend individual therapy sessions.

In making that determination, this court applies the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976); *In re N.D.O.*, 121 Nev. at 384, 115 P.3d at 226. The *Mathews* test requires the balancing of the parents' interests, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *In re N.D.O.*, 121 Nev. at 383, 115 P.3d at 225. In *N.D.O.*, this court applied the *Mathews* test to a similar set of facts and held that counsel was not constitutionally required. *Id.* at 386, 115 P.3d at 227. After reviewing the record, we conclude that appellants have failed to meaningfully distinguish this case from *N.D.O.*, and therefore, appellants do not have a constitutional right to counsel in this case. Because Damu M. and Jessica W. do not have a constitutional right to counsel in this case, their ineffective assistance of counsel claim fails as a matter of law. Further, because we conclude they lack the necessary basis to assert an ineffective assistance of counsel claim, we decline to address their arguments regarding what standard should be employed to assess such a claim in termination proceedings.

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Pickering

cc: Hon. Cynthia N. Giuliani, District Judge
   Howard Kim & Associates
   Cobeaga Law Firm
   Clark County District Attorney/Juvenile Division
   Eighth District Court Clerk