# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO: L.I., MINOR UNDER 18 YEARS OF AGE.

No. 83673

FILED

AUG 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

CODY B.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT OF FAMILY SERVICES; AND L.I., MINOR UNDER 18 YEARS OF AGE,
Respondents.

## ORDER OF AFFIRMANCE

This appeal challenges a district court order terminating parental rights. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.[1] Appellant is the natural father of L.I., a minor child, who was found to be the subject of neglect under NRS Chapter 432B. After a termination of parental rights trial, the district court terminated appellant's parental rights, finding parental fault—failure to adjust and token efforts—and that it was in L.I.'s best interest to remain with the prospective adoptive family. On appeal, appellant argues several issues warrant reversal, all of which lack merit as set forth below.

Appellant first argues that he had inadequate time with his counsel to prepare for trial due to facility lockdowns and because he had

---

[1]Having considered the pro se brief filed by appellant, we conclude that a response is not necessary, NRAP 46A(c), and that oral argument is not warranted, NRAP 34(f)(3). This appeal therefore has been decided based on the pro se brief and the record. *Id.*

22-25197

only thirty minutes with counsel to prepare the day before trial.[2] To the extent appellant argues that he received ineffective assistance of counsel, we disagree. "[T]he Fourteenth Amendment does not require the appointment of counsel in all termination proceedings." *In re Parental Rights as to N.D.O.*, 121 Nev. 379, 383, 115 P.3d 223, 225 (2005). Instead, "a court must balance the private interests at stake, the government's interest and the risk that the procedures used will lead to erroneous decisions." *Id.* Appellant and DFS both have a strong interest at stake in these proceedings. Appellant has a strong interest because termination of parental rights severs the parent-child relationship. But the State also has a strong interest in protecting children from "neglect and ensur[ing] that [L.I.] ha[s] a stable family life." *Id.* at 384, 115 P.3d at 226.

Thus, we turn to the risk of an erroneous decision. We identify no particular intricacies of appellant's case that would undermine confidence in the result the district court reached. While cases requiring expert testimony may be difficult to navigate without counsel, no expert testimony was offered in appellant's case. *Id.* at 385, 115 P.3d at 227 (holding that whether expert testimony is required is a relevant factor in determining whether there was a high risk of an erroneous decision). Moreover, appellant was present at the trial and was able to testify. *Id.* (holding that whether the parent is able to testify is a relevant consideration

---

[2]Notably, appellant does not challenge the district court's substantive findings on parental fault or on the child's best interest. Nevertheless, we conclude that substantial evidence supports the district court's findings, including witness testimony and judicial notice of facts such as appellant's incarcerations. *See In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) ("This court will uphold termination orders based on substantial evidence, and will not substitute its own judgment for that of the district court.").

for whether there was a high risk of an erroneous decision). And the evidence supporting termination of parental rights included court-mandated DFS reports reflecting neglect and no progress toward reunification, as well as judicial notice of appellant's criminal convictions and incarcerations. As this evidence is admissible and not subject to objection, we conclude that nothing in the record points to a high risk of an incorrect decision. *See id.* at 384-85, 115 P.3d at 226 (holding that statements appearing in court-mandated DFS reports are admissible because they are already part of the district court record); *In re Parental Rights of J.L.N.*, 118 Nev. 621, 628, 55 P.3d 955, 960 (2002) (holding that, in considering a parent's incarceration in termination of parental rights proceedings, "the district court must consider the nature of the crime, the sentence imposed, who the crime was committed upon, the parent's conduct toward the child before and during incarceration, and the child's specific needs"). Balancing the foregoing, appellant did not have a right to counsel in the district court and any ineffective-assistance-of-counsel claim therefore necessarily fails. *In re N.D.O.*, 121 Nev. at 386, 115 P.3d at 227 (holding that without a right to counsel there can be no ineffective-assistance-of-counsel claim).

To the extent appellant argues that the limited time he had with his counsel violated his due process rights because he did not have adequate time to prepare for trial, we also disagree. "[D]ue process requires states to provide parents with fundamentally fair procedures in parental termination proceedings." *In re Parental Rights as to M.F.*, 132 Nev. 209, 212, 371 P.3d 995, 998 (2016). As with the analysis for determining whether a parent is constitutionally entitled to counsel, in order to determine whether the proceedings comport with due process requirements, we apply

a balancing test comprised of three factors: "(1) the private interest affected by the proceeding, (2) the risk of error inherent in the state's procedure, and (3) the countervailing government interest." *Id.* at 212-13, 371 P.3d at 998. Further, we recently held in addressing due process arguments regarding measures taken during the COVID-19 pandemic that "[u]nusual, historic circumstances can require unusual, temporary accommodations." *Chaparro v. State*, 137 Nev., Adv. Op. 68, 497 P.3d 1187, 1195 (2021). Here, it appears that both parties have compelling interests because appellant has an interest in the companionship, care, custody, and management of L.I.; and the State had an interest in the public's safety at a time when the COVID-19 pandemic was ravaging the nation. Thus, the analysis turns on an evaluation of the risk that the procedures used would have resulted in an erroneous decision.

We conclude that appellant fails to demonstrate that there was a high risk that the procedures implemented during the pandemic that he complains of would have resulted in an erroneous decision. The record reflects that the district court demonstrated familiarity with the rules of evidence, the legal standards of a termination action, and the Nevada Rules of Civil Procedure, and the court applied the correct standard of proof. *See In re M.F.*, 132 Nev. at 214, 371 P.3d at 999 (providing relevant factors for determining whether the proceedings in a termination of parental rights resulted in a high risk of an erroneous decision). Additionally, appellant was given notice of the proceedings; was able to testify at trial; and was represented by counsel during the proceedings, with whom he was able to confer with privately even when incarcerated, despite having no constitutional right to counsel, as explained above. *See id.* Also, as

evidenced by the current appeal, appellant retained the right to appeal from an adverse decision. *See id.*

Additionally, appellant fails to identify any additional evidence he could have presented if he would have had more time with his counsel, or why a thirty-minute meeting with counsel was inadequate for his counsel to prepare his case. *State v. Autry,* 103 Nev. 552, 556, 746 P.2d 637, 640 (1987) (holding that "proof of prejudice is generally a necessary . . . element of a due process claim" (internal quotation marks omitted)). Notably, the record reflects that appellant did not participate in his case until the initial hearing on the termination of parental rights on October 8, 2019, over a year after he was summonsed to appear. It also reflects that there were periods in which appellant was not incarcerated and he could have attempted to prepare his case with counsel or comply with his case plan, but he chose not to do so.[3] And, as explained above, the evidence admitted at trial, even if objected to, would have ultimately been admitted. Thus, we conclude that he fails to demonstrate that this argument warrants reversal.

Reviewing for an abuse of discretion, we also reject appellant's final argument that the district court should have continued the trial. *See Zessman v. State,* 94 Nev. 28, 31, 573 P.2d 1174, 1177 (1978) (holding that "[t]he matter of continuance is traditionally within the discretion of the trial judge"). Appellant fails to demonstrate that the district court had a duty under the circumstances to continue the trial absent a request to do so,

---

[3]For example, despite not being "in custody for any substantial period of time between March 2018 and February 2019," and despite being released from a correctional housing facility for nearly two months before being arrested again for burglary in January of 2020, the record does not demonstrate that appellant made any attempts to prepare his case with counsel or comply with his DFS case plan.

especially considering the numerous previous continuances and appellant's initial lack of participation in the case. Moreover, while appellant moved for a continuance before the February 12, 2021, trial date, he did not file such a motion before the trial set for May 17, 2021. Thus, we conclude that the district court did not abuse its discretion by not continuing the trial. Accordingly, we

ORDER the judgment of the district court AFFIRMED.[4]

_____, C.J.
Parraguirre

_____, J.           _____ Sr.J.
Silver                                                  Gibbons

cc:    Hon. Robert Teuton, District Judge, Family Court Division
       Cody B.
       Clark County District Attorney/Juvenile Division
       Legal Aid Center of Southern Nevada, Inc.
       Eighth District Court Clerk

_____

[4]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.