NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

YESSICA R., EFRAIN R., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.R., S.R., T.R., *Appellees*.

No. 1 CA-JV 19-0185
FILED 1-16-2020

Appeal from the Superior Court in Maricopa County
No. JD33687
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Denise L. Carrol, Esq, Scottsdale
By Denise L. Carroll
*Counsel for Appellant Yessica R.*

The Stavris Law Firm, P.L.L.C., Scottsdale
By Alison Stavris
*Counsel for Appellant Efrain R.*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

---

J O N E S, Judge:

¶1        Yessica R. (Mother) and Efrain R. (Father) appeal from the juvenile court's orders terminating parental rights to K.R., S.R., and T.R. (the Children),[1] arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence and failed to prove that termination was in the Children's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In January 2017, DCS received a report that Mother was leaving the Children, then ages eleven, eight, and four, home alone overnight several times per week in unsanitary conditions and without sufficient food.[2]  Upon investigation, DCS learned Mother was not ensuring the Children attended school regularly or addressing their medical needs.  Mother also admitted a history of cutting herself and substance abuse.  She reported ongoing methadone treatment and was observed with recent cuts on her arms.  Meanwhile, Father was approximately halfway through a five-year prison term.

¶3        DCS removed the Children from Mother's care and filed a petition alleging they were dependent upon the ground of neglect.  Mother was referred for a psychological consult, substance abuse testing and treatment, parent aide services, individual counseling, and visitation.  A psychologist expressed concern regarding Mother's mental health but recommended a comprehensive psychological evaluation after DCS

---

[1]        Father is not the biological parent of T.R.  T.R.'s father is not a party to this appeal.

[2]        "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision."  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002)).

confirmed her compliance with methadone treatment. Father was encouraged to participate in any self-improvement services and parenting classes offered at the prison. The juvenile court adjudicated the Children dependent as to both parents and adopted a case plan of family reunification.

¶4        Mother initially engaged in parent aide services and individual counseling. Although Mother made some progress toward her goals, the parent aide expressed concern in June 2017 regarding Mother's communication with the Children, noting she "need[ed] . . . to work on . . . not engaging in any conversations with her children that cause them stress, fear or any trauma." Mother did not complete her mental health objectives or satisfactorily demonstrate hands-on parenting skills or the ability to remain mentally present at visitation, and eventually closed out of the service unsuccessfully in October 2017. She was later re-referred for services but did not even attend the scheduled intake appointment.

¶5        Mother was evaluated for individual therapy in February 2017 and told that the recommended therapy, Dialectical Behavior Therapy (DBT),[3] would be ineffective while she was using methadone. Mother said she would work with a medical provider to change her medication but did not do so. She was placed in a different program but only attended half of the sessions and observed to be "unreceptive to suggestions for change." When she was re-referred for continued counseling in September, Mother chose not to re-engage.

¶6        Between March and May 2017, Mother missed seven of ten scheduled urinalysis tests, and the service was closed for noncompliance. After being re-referred in August, Mother participated in three scheduled tests, then stopped testing altogether in October. Mother did not test positive for any substances but declined to participate in a substance abuse assessment or treatment.

¶7        In September 2017, DCS received records indicating Mother was compliant with her methadone treatment. Although Mother had not tested positive for any substances, the tests at the methadone clinic were not supervised to ensure accuracy. Mother was thereafter referred for a comprehensive psychological evaluation.

---

[3]        DBT is used to teach coping skills and emotional regulation to individuals with personality disorders.

¶8            At the January 2018 evaluation, Mother disclosed a history of depression. She stated she began cutting herself around age fourteen before becoming addicted to pain medication and seeking treatment at the methadone clinic, where she had been a patient for the past four years. The psychologist diagnosed Mother with major depressive disorder, post-traumatic stress disorder, other specified personality disorder, and opioid use disorder. The psychologist reported that, together, these conditions affected Mother's impulse control, emotional regulation, and interpersonal functioning. The psychologist opined that a child in Mother's care remained at risk for neglect and abuse.

¶9            The psychologist recommended Mother participate in a substance abuse assessment and treatment, domestic violence classes, and individual therapy, which "may" include DBT "to help with her cutting." She also suggested DCS "may want to . . . explore[]" psychiatric services to determine if medication would be appropriate. Finally, the psychologist found Mother's prognosis to become a minimally adequate parent was "dependent on [the] success of the current and proposed interventions" but concluded that progress could take months or years.

¶10           Despite this evaluation, Mother's participation in services did not improve. Instead, she tested positive for opiates in early 2018. She did not re-engage in substance abuse testing after a third referral in February 2018, or a fourth in August. She did attend a substance abuse assessment in August 2018, after which she was diagnosed with a mild opioid disorder based upon her extended methadone use. Mother was referred for standard outpatient substance abuse treatment but did not follow up for treatment for several weeks. And although Mother denied any recent history of cutting, she continued to cut herself, once so severely that she required emergency medical care and stitches.

¶11           By August 2018, DCS reported that Mother failed to acknowledge her mental health and substance abuse issues, had not consistently engaged in services, and had not made any progress toward her treatment goals. In November, the juvenile court changed the case plan to severance and adoption.

¶12           Meanwhile, though supervised visits with the Children were available, Mother attended only sporadically, sometimes as infrequently as once per month. The older children expressed concern about returning to Mother's care, especially after Mother told K.R. she would again rely on K.R. to babysit her younger siblings if reunification were successful.

4

Mother then failed to attend a scheduled psychiatric evaluation in January 2019.

¶13        By the time of the March 2019 contested hearing, Mother had completed standard outpatient substance abuse treatment, begun a parenting class, was employed, and had an appropriate home.  She testified that working nights would allow her time to take care of the Children but acknowledged that, on her then-current schedule of working nights, she frequently slept through daytime visits and appointments.  She admitted a long history of substance abuse and current involvement in methadone treatment but denied any current substance abuse, denied requiring any ongoing substance abuse treatment, and denied experiencing any mental health issues beyond depression caused by the removal of the Children.

¶14        The psychologist who evaluated Mother testified that Mother's diagnoses affect her impulse control, emotional regulation, and interpersonal functioning.  She expressed concern that Mother minimized her role in causing the Children to be removed from her care and had become addicted to methadone during her six-plus years of treatment, further complicating her attempts to become an adequate parent.  The psychologist also opined that Mother's depression and mental health issues predated the Children's removal and were not caused by her involvement with DCS.

¶15        The DCS case manager recognized that Mother had participated in some services but testified Mother had not completed a parenting program or otherwise demonstrated she could put the Children's needs ahead of her own.  Meanwhile, the Children were thriving in the care of their maternal grandparents, who were meeting the Children's needs and willing to adopt.  The case manager testified that termination of parental rights would benefit the Children by providing them with the opportunity for permanency and consistency, together, in a safe, stable home they had known all their lives.  Conversely, she testified that maintaining parental rights would deprive the Children of permanency.

¶16        DCS also presented evidence that Father had been convicted of two counts of felony aggravated assault and sentenced to a five-year term of imprisonment that began in November 2014.  Father testified he had not seen the Children since a 2017 prison visit and did not anticipate being released until October 2019.  The parents and DCS presented conflicting testimony regarding whether, when, and how frequently Father contacted the Children.

**¶17**        After taking the matter under advisement, the juvenile court
found clear and convincing evidence that termination of Mother's parental
rights was warranted given her failure to remedy the circumstances causing
the Children to be in out-of-home care for longer than the statutory periods,
*see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(a), (c),[4] and that termination of
Father's parental rights was warranted on the grounds of abandonment and
lengthy incarceration, *see* A.R.S. § 8-533(B)(1), (4).  The court also found that
severance of both parents' rights was in the Children's best interests, and
entered an order terminating Mother's and Father's parental rights.  Mother
and Father timely appealed, and we have jurisdiction pursuant to A.R.S.
§§ 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the
Juvenile Court 103(A).

## DISCUSSION

### I.        DCS Proved the Statutory Grounds for Severance of Mother's Parental Rights by Clear and Convincing Evidence.

**¶18**        A parent's rights may be terminated if the juvenile court finds
clear and convincing evidence that DCS:

> has made a diligent effort to provide appropriate
> reunification services . . . [t]he child has been in an out-of-
> home placement for a cumulative total period of nine months
> or longer . . . and the parent has substantially neglected or
> wil[l]fully refused to remedy the circumstances that cause the
> child to be in an out-of-home placement.

A.R.S. § 8-533(B)(8)(a); *see also Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 42
(2005).  We do not reweigh evidence on appeal; the juvenile court "is in the
best position to weigh the evidence, observe the parties, judge the
credibility of witnesses, and make appropriate findings." *Jesus M.*, 203 Ariz.
at 280, ¶ 4 (citing *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546
(App. 1987)).  Accordingly, we review the court's findings for clear error,
*Donald W., Sr. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 199, 204, ¶ 14 (App. 2007)
(citing *Anonymous v. Anonymous*, 25 Ariz. App. 10, 12 (1975)), and will
reverse only if "as a matter of law, no reasonable fact-finder could have
found the evidence satisfied the applicable burden of proof," *Titus S. v.
DCS*, 244 Ariz. 365, 369, ¶ 15 (App. 2018) (citing *Mary Lou C. v. Ariz. Dep't*

---

[4]        Absent material changes from the relevant date, we cite the current
version of rules and statutes.

*of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94-95, ¶¶ 9-10 (App. 2009)).

### A.        Diligent Efforts

**¶19**        Before parental rights may be terminated based on a child's time in an out-of-home placement, DCS must prove it made diligent reunification efforts. A.R.S. § 8-533(B)(8). Mother argues the juvenile court erred in finding diligent efforts, asserting DCS "failed to timely offer critical services that would have allowed Mother to reunify with her children." Mother does not identify what services she asserts were inadequate, nor does she explain how she would have benefitted from additional services, particularly given her general lack of commitment to the services that were in place. And, although her citations to the record suggest Mother is dissatisfied with the timeliness of DCS's referral for a psychiatric evaluation, she also claims that the evaluation was unnecessary. *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (recognizing that DCS is not required to provide "every conceivable service") (citing *Maricopa Cty. Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)). Under these circumstances, Mother fails to prove error.

### B.        Failure to Remedy Circumstances

**¶20**        Mother does not dispute the length of time the Children were in out-of-home care but argues DCS did not prove by clear and convincing evidence that she had substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement. To support her argument, Mother points to evidence that she had graduated from standard outpatient substance abuse treatment and secured appropriate employment and housing.

**¶21**        Because the provision authorizing termination based upon a child's time in out-of-home care was adopted to address the growing number of children lingering in foster care while "parents maintain parental rights but refuse to assume their parental responsibilities," severance on this ground is not limited to those who have completely neglected to remedy the circumstances or completely failed to participate in services. *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988)). Thus, a parent who makes "appreciable, good faith efforts" at reunification "will not be found to have substantially neglected to remedy the circumstances that caused [the] out-of-home placement." *Id.* at 576.

However, "a trial court is well within its discretion in finding substantial neglect" where the parent "expend[s] only minimal effort." *Id.*

¶22        The juvenile court here found:

> [D]espite mother's claims and excuses, she has failed to participate meaningfully in the services offered. While she did complete some services, such as the psychological evaluation, she did not follow through with the recommendations that stemmed from the evaluation. She was told she could not do the DBT therapy while on methadone. She said she would taper her use and she was also given the option of switching to suboxone. She did neither. She was enrolled in the wellness program as an alternative and did not make significant progress. She enrolled in the counseling program but was deemed resistant and not amenable to the changes that were suggested. She did not complete this service so a second referral was put in but mother refused to engage when given this second chance.

These findings are supported by the record and support the court's conclusion that severance was warranted under A.R.S. § 8-533(8)(a). Although Mother did make some progress toward reunification, her actions were not the "appreciable, good faith efforts" contemplated by A.R.S. § 8-533(B)(8)(a). *See JS-501568*, 177 Ariz. at 576. We therefore find no error.[5]

## II. DCS Proved the Statutory Grounds for Severance of Father's Parental Rights by Clear and Convincing Evidence.

¶23        A parent's rights may be terminated if "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). Whether this ground is proved

---

[5]     Because clear and convincing evidence supports the termination order under A.R.S. § 8-533(8)(a), we need not, and do not, consider whether the other grounds on which the juvenile court ruled are supported by the record. *Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.") (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000), and *JS-6520*, 157 Ariz. at 242).

is a fact-specific inquiry requiring examination of "all relevant factors," including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29. "[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance." *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 17 (App. 2014) (quoting *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007)). Accordingly, we defer to the juvenile court's findings and the weight that court assigned to the evidence and the factors. *Id.* at 440, ¶ 12. We will affirm "unless, as a matter of law, no reasonable evidence supports those findings," *id.* (citing *Denise R.*, 221 Ariz. at 95, ¶ 10), bearing in mind that the focus is "on the child's needs during the [parent's] incarceration," *Jeffrey P. v. DCS*, 239 Ariz. 212, 215, ¶ 14 (App. 2016).

**¶24** In arguing DCS failed to prove his incarceration deprived the Children of a normal home for a period of years, Father relies primarily upon evidence that he has maintained a relationship with them, via telephone, throughout the proceedings. If true, this evidence would weigh in favor of maintaining parental rights, but it neither compels nor precludes severance. *Rocky J.*, 234 Ariz. at 440, ¶ 12 (quoting *Christy C.*, 214 Ariz. at 450, ¶ 15). The juvenile court did not find the contact between Father and the Children sufficiently persuasive to overcome other factors, including that: Father "could have been more active in working to maintain a relationship with the children but he has not"; Father had been incarcerated for several years of the Children's relatively short lives and had yet to complete his sentence; Father had not provided the Children a normal home since he was incarcerated and would be unable to do so for at least another year; and the Children had suffered from the lack of permanency occasioned by the absence of their parents. We defer to that evaluation,

which is both well-reasoned and supported by the record. Father fails to prove error.[6]

### III.    DCS Proved Severance was in the Children's Best Interests.

¶25         Mother argues DCS failed to prove severance was in the Children's best interests because she shares a bond with them. Father separately argues the finding is error because he shares a bond with the Children and because there is no evidence their day-to-day lives would change if he maintained his parental rights. We review the best-interests finding for an abuse of discretion. *See Titus S.*, 244 Ariz. at 369, ¶ 15 (citing *Mary Lou C.*, 207 Ariz. at 47, ¶ 8).

¶26         The existence of a bond between the parent and child, "although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)). Likewise, "[t]hat severance would not necessarily change any day-to-day aspect of the current living arrangement does not preclude a best-interests finding" in favor of termination. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 5, ¶ 19 (2016) (quotation omitted). Instead, the juvenile court must consider all relevant facts and determine, upon a case-by-case basis, whether a preponderance of the evidence supports a finding that a child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citations omitted); *accord Demetrius L.*, 239 Ariz. at 4, ¶ 16.

¶27         The benefit to a child, particularly where he has been out of the parents' care for a lengthy period, is the opportunity for permanency in lieu of remaining indefinitely in a situation where "parents maintain parental rights but refuse to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *JS-6520*, 157 Ariz. at 243, and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)) (emphasis omitted). "At this stage, the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded the interest of

---

[6]        Because we affirm the termination of Father's parental rights based upon his lengthy incarceration, we do not address his argument that DCS failed to prove abandonment by clear and convincing evidence. *See supra* n.5.

the unfit parent in maintaining parental rights." *Kent K.*, 210 Ariz. at 287, ¶ 37.

¶28 The juvenile court here found the Children had been in an out-of-home placement for more than two years without Mother's or Father's care or guidance, and neither parent was close to reunification. Moreover, the Children were adoptable, thriving in an adoptive placement with their maternal grandfather, and would benefit from the opportunity to be adopted into a permanent, stable, and safe home. The court's finding that severance was in the Children's best interests is supported by the record, and we find no abuse of discretion. *See Alma S. v. DCS*, 245 Ariz. 146, 152, ¶ 21 (2018) (affirming the best-interests finding where the record showed "[the] children were excelling in their out-of-home placements, the foster parents were planning to adopt the children, . . . the children [we]re otherwise adoptable . . . [and] [the parent] was still inclined to endanger the children despite her rehabilitative progress").

## CONCLUSION

¶29 The juvenile court's order terminating Mother's and Father's parental rights to the Children is affirmed.

